WANDALENE VEDEPO, Appellant, v. WILLIAM VEDEPO, Appellee.

No. 47450.

(Reported in 37 N. W. 2d 916)

896

France & France, of Tipton, for appellant.

Hamann & Doerr and James H. Dower, all of Davenport, and Elderkin & Locher, of Cedar Rapids, for appellee.

MULRONEY, J.—Wandalene Vedepo and William Vedepo were married February 6, 1948. About three and a half months later Wandalene sued William for divorce alleging he was guilty of cruel and inhuman treatment such as to endanger her life.

Testifying in support of her allegation of cruelty, Wandalene said that at the time she was married she was twenty years old and teaching school at Lime City and living with a family named Eserhaut; that after her marriage her husband lived with her at the Eserhaut home until about the close of her school year, when she went to her parents' farm home near Lisbon and filed this divorce action. She testified that defendant was unemployed at the time of their marriage but went to work shortly thereafter and held five or six jobs during the time they lived together but never contributed to her support, and she had to pay their board bill at Eserhauts out of her salary as a teacher. She said he frequently asked her for money and if he did not get it he threatened to put her in an epileptic colony. She said he frequently twisted her arms when she would get letters from some of her friends and would not let him read

them, and he twisted her arm once in the presence of Mrs. Eserhaut. She said they went to dances a great deal, as many as three a week, and he would be angry with her and pout because she danced with other boys. She described an incident at a dance at Stanwood when she was sitting next to a boy named Bohr and defendant came up to her and asked her if she were pregnant and twisted her arm. She said defendant's treatment of her caused her to worry a great deal and that her health began to fail. She said she had been afflicted with epilepsy since she was about seven years old and defendant knew of this, but she had not had many attacks just before her marriage but during her marriage she had had many attacks.

Plaintiff's mother and younger sister testified to hearing defendant on one occasion say to plaintiff that he had enough on her that he could and would send her to an epileptic colony.

Defendant denied the threats and arm-twisting incidents and his version of the incident at the dance was that he laid his hand on her shoulder and leaned over to her ear and asked the question as to whether she was pregnant. He said he then asked her to dance but she refused and danced with Bohr. The record indicates this incident occurred after plaintiff had left defendant and returned to the home of her parents. He said he never asked his wife for money; that he gave her money for clothes (about $70), paid $20 on the last month's board bill at Eserhauts, and paid part of her doctor bill and had made arrangements with the doctor for additional time to pay the balance.

Mrs. Eserhaut testified for defendant, saying she had never seen defendant twist plaintiff's arms, and that he was very well-behaved while living in her home, so far as she ever noticed. She also said plaintiff seemed in very good health during the period of her marriage. In fact, Mrs. Eserhaut thought her health improved during her marriage.

While living at Eserhauts the Vedepos stayed for about two weeks at the Bowman home and during a part of the time Mrs. Bowman was in the hospital and they looked after the Bowman children. Mr. and Mrs. Bowman testified for defendant, saying they never heard any threats on the part of defendant

to have his wife committed to a state institution and never saw him twist her arms. They said she did not appear to be in a nervous condition while in their home and they said their house was small and they could hear almost any noise that went on in the house.

The trial court found that plaintiff had failed to prove by a preponderance of the competent evidence in this cause that defendant had been guilty of such cruel and inhuman treatment as to seriously affect her health or endanger her life, and dismissed plaintiff's petition.

I. The foregoing shows that plaintiff sought to prove the allegations of cruelty by evidence of physical violence and evidence of threats. She said he twisted her arm almost every week in his efforts to get letters away from her and he twisted her arm at the dance at Stanwood. There is no corroboration of her testimony, and, according to her own story, Richard Bohr and others could have testified as to the Stanwood incident. This couple lived in the homes of other persons during their brief period of cohabitation but those householders apparently knew nothing of such arm-twisting incidents that she said occurred twelve or fourteen times. They testified that defendant was well-behaved. And they further testified plaintiff's health did not decline during the period the parties lived together. Without considering the lack of corroboration, the weight of the evidence of physical violence is against the petition rather than a preponderance sustaining it.

II. Plaintiff testified that defendant demanded money from her repeatedly and always threatened to send her to an epileptic "colony" if she did not give it to him. She said she believed that if she had not given him money he would carry out these threats. Defendant, on the other hand, said she did not have any money when he married her and though he did not deny she had paid the Eserhaut board bill of $40 a month for February, March and April, he said he gave her money for clothes and even $5 for treats for the children in her school. He said he had never demanded or borrowed any money from her. In May, apparently after plaintiff had left defendant and returned to the home of her parents, defendant came to the home

and talked to her in the presence of her mother and sister. Plaintiff says at that time defendant said he had enough on her "to send me to an epileptic colony." Her mother and sister say that at that time defendant said he had enough on her that he could *and would* send her to an epileptic colony. Plaintiff does not say that defendant was demanding money from her on this last occasion and as stated, the record indicates this was after she had left him.

 Cruelty, for the purpose of divorce, can be bodily injury, either actual or menaced. A threat of bodily harm if there is danger reasonably to be apprehended which would have the effect of impairing health would be legal cruelty. Wheeler v. Wheeler, 53 Iowa 511, 5 N. W. 689, 36 Am. Rep. 240. A threat of incarceration is a threat of bodily injury. State v. Browning, 153 Iowa 37, 133 N. W. 330.

 Again the weight of the evidence as to the threats to put plaintiff in an epileptic colony, or institution, if defendant's money demands were not met, is against the petition. Defendant testified fairly specifically as to the money he gave her, and enumerated the clothing items purchased such as a dress, slips, shoes, hose, blouse, and two skirts. Accepting this testimony as true—and it is only denied by plaintiff's general statement, "he did not contribute anything toward my living at Eserhauts"—we must necessarily believe that the weight of the evidence lies with defendant—that he was not continuously demanding money from plaintiff under threat of putting her in an epileptic institution, or at least that she failed to prove such threats by a preponderance of the testimony.

The May incident in the presence of plaintiff's mother and sister was, according to plaintiff's testimony, no threat at all. It appears to be an altercation after she had left defendant and only the corroborating witnesses say he threatened to do anything. We need not discuss the question of whether the alleged statements of defendant would be likely to induce in plaintiff a fear of immediate confinement. We observe, however, that plaintiff was a rural schoolteacher, with better than a high-school education. Neither her mother nor sister was asked if the threat seemed to cause her any anxiety or nervousness. In fact

they were not asked any questions about her nervousness and alleged declining health after she was married.

Upon the whole record we are convinced the trial court was right and the decree is affirmed.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.