GERTRUDE PAPPAS, appellant, v. TOM PAPPAS, appellee.

No. 48903.

(Reported in 75 N.W.2d 264)

MARCH 6, 1956.

L. L. Boomhower, of Mason City, for appellant.

Royal & Royal, of Des Moines, for appellee.

THOMPSON, J.—Plaintiff and defendant, theretofore wife and husband, were divorced by decree of the Cerro Gordo District Court on March 18, 1946. Plaintiff was given custody of the minor child, Madelyn Pappas, then about one year of age, with certain visitation rights in the defendant; and he was ordered to pay $40 per month "directly to the plaintiff" for support of the child. Apparently these payments were made in accordance with the decree at least until July 1, 1953.

On March 10, 1954, there was filed in the office of the clerk of the above court an instrument denominated "Final Receipt of Support Money." It is this:

"Comes now Gertrude Ringus, formerly Gertrude Pappas, and hereby states to the above named Court that she has received each and every installment due to her for and on behalf of the minor child of said parties, Madelyn Pappas, up to the date of the execution of this receipt and release and she does by her signature hereto attached release the said Tom Pappas from any debt or liability in accordance with the decree of Court with relation to child support as filed in the above entitled cause of action. The undersigned further states that the minor child, Madelyn Pappas, with the consent of Tom Pappas, is being adopted by her present husband, Tony J. Ringus, and that the said Tom Pappas has relinquished all rights to the custody and control of said child. Gertrude Pappas Ringus. (Duly Verified.)"

No further payments have been made since the time of filing of the receipt, and it is plaintiff's testimony that none was in fact made after July 1, 1953. On June 7, 1955, plaintiff filed an application for judgment for the alleged delinquent installments

at $40 per month from July 1, 1953, in the principal sum of $880, with interest. She also prayed cancellation of the receipt above set forth.

It appears without substantial contradiction in the record that plaintiff had remarried with one Tony J. Ringus, and that the receipt was given in consideration of the defendant executing a consent to adoption of the child, Madelyn, by Ringus, her stepfather. Apparently negotiations had been had for some time preceding the actual signing and filing of the receipt. Plaintiff, the child and Ringus were living in Florida, while the defendant resided in Des Moines. The negotiations resulted in the execution of a consent by defendant to the adoption of Madelyn by Ringus, and the payment by him of $150 to an attorney representing plaintiff and Ringus, which sum apparently represented the costs and expenses of the adoption proceeding. The petition for adoption was duly filed, but for some reason not entirely clear in the record was not granted. We have only plaintiff's testimony on this point. She says: "The fact was the child did not want to be adopted and the welfare would not give their consent to it." There is no other competent evidence in the record concerning the adoption proceedings or whether they have been finally terminated by a definite denial. At one point the plaintiff, speaking of the written consent to adoption executed by the defendant, says: "It's resting there (in the Florida court) for further use." Neither the consent to adoption nor the money paid to plaintiff's attorney for the cost of procuring it have been returned to the defendant. However, plaintiff alleges the adoption has failed and it is her position that this cancels all arrangements between herself and the defendant and restores the provisions of the original divorce decree to full effect.

■ I. If we take plaintiff's case as it is made by her own testimony, the defendant in executing the consent to adoption and paying the sum of $150 did all that the agreement between them required him to do. He did not guarantee that the adoption would be consummated; that was in the hands of plaintiff and her then husband, the proposed adoptive parent, and their attorney, and defendant had no control over it. When he performed his part of the contract, he would ordinarily have been entitled to receive the consideration for which he bargained. But

in this case the quid pro quo was release from liability for support of his minor child; and the plaintiff now urges that no agreement between the parents, or between one or both of them and a third party, can relieve either parent of the duty to support minor children. Such an agreement, says the plaintiff, is against public policy and void. That any agreement which purports to relieve a father of such duty to support, *entirely and permanently,* offends against the public policy of the state is settled in Iowa. Addy v. Addy, 240 Iowa 255, 259, 36 N.W.2d 352, 355. We there said (Garfield, J.): "To relieve a divorced father of all legal obligation to support his minor children is against public policy." 39 Am. Jur., Parent and Child, section 42, is cited. See also 67 C. J. S., Parent and Child, section 15, page 696.

But the rule has its limitations. The parents may contract between themselves as to the support of their minor child, if the best interests of the child are served thereby. 39 Am. Jur., Parent and Child, section 42, page 653; 67 C. J. S., Parent and Child, section 15, page 697.

II. The Iowa rule is that the parents are equally liable for the support of their minor children. Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1089, 65 N.W.2d 366, 370; Addy v. Addy, supra, page 264 of 240 Iowa, page 358 of 36 N.W.2d, and cases cited. We have also held that a divorced mother who voluntarily supports her child cannot recover from the father for past support, in the absence of an agreement therefor. Addy v. Addy, supra, page 261 of 240 Iowa, page 356 of 36 N.W.2d; Stamp v. Stamp, 196 Iowa 1133, 1134, 196 N.W. 7, 8; Cushman v. Hassler, 82 Iowa 295, 297, 47 N.W. 1036, 1037; Johnson v. Barnes, 69 Iowa 641, 644, 29 N.W. 759, 760.

In Cushman v. Hassler, supra, the father had by contract agreed to relieve the mother of support for a minor child. We there said: "While as to the boy and the public the plaintiff still owed the duty, as to the defendant she did not; as between them she stood as a stranger in respect of that duty."

In the case at bar, although the decree of the court provided that the defendant should pay plaintiff $40 per month for the support of the child, the parties later agreed that this payment should be abrogated. There was an adequate considera-

tion for this agreement; the defendant was asked to, and did, consent to an adoption by the plaintiff's then husband, which consent he had a right to refuse, and he paid a substantial sum of money. He does not now contend that the plaintiff could permanently and under all circumstances relieve him of his legal duty to support his child, but only that she could agree that she would take over such duty herself, in full, so long as the best interests of the child were not jeopardized thereby. Apparently she, or her husband, the child's stepfather, have performed that duty; there is no showing the child is not being properly cared for or that the plaintiff and her husband are unable to furnish proper and adequate support.

III. In Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75, we considered a fact situation much like the instant one. The parties were divorced; the mother was given custody of the minor child, with the father directed to pay monthly support. The payments were made for some years, until third parties wished to adopt the child. Both father and mother signed a consent to the adoption, and the child was placed in the home of the proposed adoptive parents and remained there for more than two years; when, apparently because the child was not satisfied to remain away from her natural mother, the proceedings were abandoned and the child returned to her former home. No attempt had been made to have the original decree of divorce modified to relieve the father of the monthly payments, and they accumulated on the books of the clerk of the court as an apparent judgment against him. When the adoption failed, the mother attempted to enforce this judgment. We held the judgment was in effect satisfied by the mother's release and consent to adoption, saying at page 500 of 247 Iowa, page 77 of 73 N.W.2d (Larson, J.):

"This arrangement [for adoption] was intended and accepted in lieu of the $50 per month child-support payments. It waived and satisfied the plaintiff's obligation to pay defendant the support money during that period and satisfied the obligation of the original decree."

We see no reason why this language does not apply with at least equal force in the case at bar. The facts are stronger here in favor of satisfaction of the obligation of the father. The plain-

tiff in this case has expressly released her claim to anything in the way of child support given her by the decree, in much stronger language than we found sufficient in the Merkel case.

IV. Not only does Merkel v. Merkel, supra, seem controlling, but there is the additional reason that when the plaintiff discharged the defendant from his obligation by her written release, the parties were placed in the same position as if the divorce decree had awarded no support money to the plaintiff. So far as she was concerned, she had the right to so release him, and from that time on he was under no obligation to her to make the payments. Now she asks that she have judgment for the payments that would have accrued had she not released them. She is confronted by the same situation that was found or discussed in Addy v. Addy, Stamp v. Stamp, Cushman v. Hassler, and Johnson v. Barnes, all supra. She voluntarily and expressly released the defendant from his liability to her, and she, or her present husband, assumed the support of the child, and we must assume have furnished it. She is now attempting to recover from the defendant for such past support given by her at a time when he was under no duty, so far as she was concerned, to supply it. The above cited cases say she may not do so.

We do not hold that the defendant-father is relieved of his legal duty to support his minor daughter if the best interest of the child requires it. So far as the record shows here, the support furnished by the mother and stepfather of the child is adequate. If a showing be later made that the plaintiff is unable to furnish the proper support, the father's obligation might then be enforced. Our holding here is only that as between the divorced father and mother an agreement under which the latter, for a valid consideration which the former has paid, agreed to release the father from the support clause of a divorce decree is binding upon her. The plaintiff may not collect for child support until she makes a sufficient showing that she is not able to furnish proper support; and then only from the time she makes such showing. This is the substance of the trial court's holding. We find no error.—Affirmed.

All JUSTICES concur.