JEANNE M. BOUSKA, appellee, v. AUGUST BOUSKA, appellant.

No. 49332.

(Reported in 86 N.W.2d 884)

DECEMBER 17, 1957.

A. C. Campbell, of Charles City, and E. P. Shea, of Decorah, for appellant. ·

Miller & Pearson, of Decorah, for appellee.

THOMPSON, J.—The parties to this action were married on June 5, 1946, and lived together on a farm in Winneshiek County until late in 1956. Plaintiff commenced her divorce action on February 15, 1957. There are three children: Christine, age nine; August John, age 6; and Teresa, age 5. The ages are given as of the time of the trial. The trial court, after hearing the evidence, awarded plaintiff a divorce, gave her the custody of the three children, with a provision that she assume full responsibility for their care and support, and gave her the 160-acre farm on which the parties had lived during their entire married life, subject to an institutional lien of approximately $1900. Title to this farm had at all times been in the defendant. The defendant was given the livestock, farm machinery, and title was quieted in him to a house in New Hampton which he had inherited from his father. Plaintiff was also given title to eight acres of timberland, apparently of small value.

The propositions relied upon for reversal on this appeal may be summarized as follows: Plaintiff's evidence is insufficient to show inhuman treatment such as to endanger life, within the meaning of section 598.8, subsection 5, Code of 1954; there was no sufficient corroboration as required by section 598.7; the record shows condonation of the alleged marital offenses of the defendant, at least to the extent that doubt is cast upon plaintiff's fears of harm through continued living with defendant; and the award of alimony and property to the plaintiff was excessive and unreasonable.

I. At the outset of our consideration of the sufficiency of the evidence to support the decree granting a divorce, we apply two principles so well established and so often stated

that citation of authority for them is not only unnecessary but a needless encumbrance of the page: 1, that inhuman treatment may be shown without evidence of actual physical violence; and 2, that in this class of cases, particularly where the credibility of the witnesses is concerned, we give weight to the fact findings of the trial court. The plaintiff's case is that during her married life she was required to do farm work beyond her strength; that the defendant was profane and abusive to her and to the children; that he abused the livestock and on at least one occasion severely beat a man employed on the place; that she suffered eleven miscarriages and the defendant was indifferent to her physical condition, refusing on one occasion to call a doctor, and at other times requiring her to do hard physical outdoor labor while she was ill; that when she was married she was in good health and weighed about 125 pounds, while when she left the defendant she weighed about 90 pounds; and after a few months away from him, at the time of the trial her weight had increased to 110 pounds. The general showing from plaintiff's evidence is that the defendant's conduct was inhuman and such as to endanger his wife's life. It would serve no good purpose to particularize the details further. The defendant, as a witness in his own behalf, did not deny many of the accusations made by the plaintiff, and others were controverted only sketchily. As between the two parties, we think the trial court was correct in accepting plaintiff's account of the abuses and indignities to which she was subjected during their married life, and in concluding that they endangered her life.

■■ II. But the defendant urges that there is insufficient corroboration to meet the requirements of section 598.7. It must be admitted that it is not strong. But we have often held that the corroboration need not go to every detail of the plaintiff's evidence, nor need it be such in itself as to sustain the grant of a decree. It is sufficient if it tends to establish the ground relied upon for obtaining the divorce. Courtney v. Courtney, 214 Iowa 721, 724, 243 N.W. 510, 512; Davis v. Davis, 228 Iowa 764, 768, 292 N.W. 804, 805; Brown v. Brown, 248 Iowa 802, 806, 807, 82 N.W.2d 661, 663, 664, and cases cited. We find these matters shown in the record which we think furnish at least the minimum requirements of corroboration: The defendant, while the divorce

action was pending, said to the plaintiff, in the presence of the witness Rena Pierce, that she (the plaintiff) "had every grounds there was to get a divorce"; he referred to the plaintiff, in talking with the witness Scott, as "that Irish s.o.b." (plaintiff's maiden name was O'Connor); and the marked deterioration of plaintiff's health and her loss of weight during her life with the defendant, and her gain in both health and weight after she left him, are significant and furnish corroboration under the doctrine of Hines v. Hines, 192 Iowa 569, 570, 185 N.W. 91, 92, and Low v. Low, 232 Iowa 1114, 1116, 7 N.W.2d 367, 368. Failure in health and marked loss of weight during married life, unaccounted for in any other way, with improvement after separation, all as shown by testimony other than her own, may serve as corroboration of the plaintiff's evidence. We find the corroboration sufficient.

 III. Condonation is an affirmative defense and must be pleaded. Robbins v. Robbins, 234 Iowa 650, 656, 12 N.W.2d 564, 566, and cases there cited. It is not so pleaded in this case, but the defendant urges that it appears from the facts proved and must be considered as showing that the aggrieved spouse did not consider the conduct complained of so serious that she was in danger if she continued to live with him. Cooper v. Cooper, 243 Iowa 561, 565, 52 N.W.2d 517, 519, is relied upon. Here the platitude—a "platitude" being defined as the truth repeated so often it becomes tiresome—that each case must depend upon its own facts must be stated again. In some cases, continued living with a spouse accused of cruelty may be evidence of lack of fear. Yet this doctrine, carried to an extreme, would penalize the wife or husband who in good conscience makes a sincere effort to keep the marital bark off the rocks of separation. In the case before us, the plaintiff bore much and suffered much before she finally gave up the struggle to keep the ship afloat.

 We have often held that the entire married life of the parties must be considered in this class of cases. This is particularly true when the charge is inhuman treatment which endangers life. Brown v. Brown, 248 Iowa 802, 807, 82 N.W.2d 661, 664, and cases cited. This implies that the spouse who at the first mistreatment fails to leave the conjugal bed and board does not

by remaining condone or show indifference to the cruelty inflicted. We have discussed the sufficiency of the evidence to justify a decree of divorce in Division I above, and we find no reason to change our holding because the plaintiff did not fly from the home at the first, or second, or other instances of inhuman treatment by the defendant, but tried to keep the marriage intact.

■ IV. While the question of the insanity of the defendant is not set out as a separate proposition relied upon for reversal, and it does not appear that it was urged before the trial court, it is appropriate to comment upon it here. It appears that the defendant was committed to the state hospital at Independence several times during the married life of the parties. These commitments were short in time, and it is evident that the acts of cruelty testified to by the plaintiff and her witnesses must have occurred while he was at home rather than in the hospital. It is true that he was under guardianship because of mental unsoundness from the summer of 1955 until December of 1956. We are committed to the rule that a charge of inhuman treatment may not be supported by proof of acts attributable to insanity. Inhuman treatment must be willful, and it is not sufficient to show such treatment if it appears it is merely the result of nervous disorders or mental illness for which the guilty party is not responsible. Bosveld v. Bosveld, 232 Iowa 1199, 1205, 7 N.W.2d 782, 785; Ennis v. Ennis, 92 Iowa 107, 115, 60 N.W. 228, 230.

■ But in the case at bar, taking the entire married life of the parties, it is evident that the defendant's conduct made a consistent pattern of profanity, abuse, insistence upon the plaintiff performing manual farm labor beyond her strength, neglect and indifference, and that the great part of this treatment was inflicted when he was under no adjudication of insanity. Indeed, the short time that he was confined at the mental hospital on each occasion before being discharged as cured minimizes the seriousness of his derangements. In any event, there is little to show that insanity was the cause of his mistreatment of the plaintiff. As a witness for himself, at a time when he was under no disability, he did not so claim.

V. Perhaps the most difficult aspect of the case is the award of alimony and child support to the plaintiff. She was given the 160-acre farm, title to which was in the defendant, and the house-

hold furniture and one of the two family automobiles. The defendant was given all farm machinery, livestock and feed; the other automobile; and his title to a residence property in New Hampton was confirmed. Court costs and an attorney fee of $350 to plaintiff's attorneys, and the outstanding bills, amounting to less than $500, were ordered paid by him. Eight acres of timberland found by the court to be valued at $200 were also awarded to the plaintiff.

The farm was of the value of from $24,000 to $28,000, diminished by an institutional lien of about $1900, which plaintiff must assume. The farm machinery was found by the trial court to be worth $3500, the cattle $4000, and the hogs $750. The house and lot in New Hampton were valued at $4000. This latter property had been inherited by the defendant.

The defendant insists vigorously that the division of property is unfair to him. He was born and had lived on the farm in question all his life. It was purchased from his father about the time the parties were married, and he made the first payment of $3600. Payment was completed during the time the parties lived together upon it. The original purchase price is variously stated, but it was from $12,000 to $14,500. Under some conditions we would be compelled to agree that the trial court had treated the defendant inequitably in making the division it did. But there are circumstances here which overcome that conclusion.

It appears that the plaintiff inherited from her parents' estates some $3600, which she used in purchasing personal property for the farm use, paying debts owed by the defendant, or supporting the family. The record shows that she did more than her share of the necessary labor on the farm, both outdoors and indoors. She contributed largely to the earnings which liquidated the unpaid balance owed to the defendant's father on the purchase price of the real estate. She was entitled to a substantial share of it.

Another and still more important matter appears, which fully justifies the trial court's award to her. The court gave her custody of the three minor children, and provided that "she shall assume the full care and support of said children." No complaint is made here of this provision of the decree. It is some-

what unusual in that the defendant is not required to furnish any support for the three children, who were respectively nine, six, and five at the time of the divorce. But we think, under the prevailing circumstances it was wise and for the best interest of the minors.

In Iowa, parents are equally liable for the support of their minor children. But they may contract between themselves as to liability for such support, and equally the court may order either to furnish it and to hold the other free from liability therefor. It is true a parent may not be entirely relieved from such liability; the public policy of the State forbids. But as between themselves one may be held liable and the other relieved, and such an agreement or decree will be binding, at least to the extent of the resources of the parent so obligated. Pappas v. Pappas, 247 Iowa 638, 75 N.W.2d 264, 266. See also the cases therein cited, especially Cushman v. Hassler, 82 Iowa 295, 297, 47 N.W. 1036, 1037.

It is evident that the court in adjudging that the plaintiff should assume the primary obligation of support of and care for the three small children has placed a considerable burden upon her, and equally has relieved the defendant of much liability. Assuming, as courts often do, that each of these small folks will need support until he or she reaches the age of 18 years, the plaintiff must support Christine for nine years; August John for twelve years; and Teresa for thirteen years. Without attempting to give any indication of what we think is a fair allowance for child support, at a conservative figure that may easily be exceeded the plaintiff will be at an expense of from $15,000 to $20,000 in performing the duty imposed upon her by the court, and the defendant will be freed from that cost. In this view, the award of the entire farm to the plaintiff is not excessive. The trial court's decree was in all respects equitable and justified by the record.—Affirmed.

All JUSTICES concur.