Edna B. Lane, appellant, v. Howard K. Lane, appellee.

No. 50346.

October 17, 1961.

Hart & Hart, of Elkader, for appellant.

Hunt & Degnan, of Guttenberg, for appellee.

SNELL, J.—Plaintiff-wife brought this action for divorce, division of property, alimony, attorney fees, costs and equitable relief including restoration of her maiden name.

The trial court found lack of sufficient corroboration, no physical injury to plaintiff, condonation and that defendant's association with another woman occurred after plaintiff's petition was filed. Relief was denied. Plaintiff-wife appeals.

A study of the entire record leads us to a conclusion not reached by the trial court.

I. Plaintiff and defendant were married in January 1954. Each was then 37 years of age. It was plaintiff's first marriage. They lived together a little over four years. No children were born to plaintiff and defendant.

Peace and harmony in the home did not long prevail. Within a few months defendant became critical of plaintiff, her family, her housekeeping, her work and her efforts. Although we do not approve defendant's ideas as to what to expect from a wife or how a wife should be treated, the defendant may have thought himself an expert based on experience.

On the marriage license issued to the parties, defendant stated that he had been married once before. Answering interrogatories before trial, defendant said he had been married twice in addition to his present marriage. At the trial defendant admitted that he had "been married four times, five times if you count my present wife." Confusion of the defendant is offered in explanation. The explanation is not convincing. A proper regard for the truth and a proper regard for the importance of a marriage should prevent such "confusion."

There is evidence that defendant used abusive, profane and threatening language toward plaintiff; that he struck, shoved, slapped and choked her. Plaintiff feared for her life. Defendant threatened suicide and a gun in his hands discharged and shot a hole in the kitchen ceiling. He was violent with animals and inanimate objects. He was openly attentive to

another woman far beyond the limits of propriety even among good neighbors.

On October 2, 1958, after plaintiff had left defendant and started this action, but before trial, defendant wrote plaintiff as follows:

"Edna,

"This is your last chance, you want to settle out of court, or I'll go all the way.

"Have arrangements against your mother, and witnesses too. I'll break her if it the last thing I can do.

"Make your own decision, I don't have to give you a divorce, you know. Can be reasonable if you can be. Answer either way by letter.

"/s/ Howard"

While the evidence does not indicate that plaintiff's mother is rich, it does show that she owns some property. Defendant's letter indicates greater interest in money than in the love and affection of his wife.

If corroborated and not condoned, the evidence was ample to entitle plaintiff to a divorce.

II.   Evidence corroborating defendant's association with another woman was ample. He borrowed a truck and moved her furniture from her home late one evening. They exchanged letters through a third person. They rode around the country together. He visited her until late at night. He offered to pay her rent. He said to her husband, "* * * if she ever gets loose I am going to go after her." Defendant attempts to explain and justify his attentions as mere acts of kindness to a neighbor who was also having family trouble.

One evening, while riding with his friendly neighbor, it was suggested that they go to Prairie du Chien for a late supper. Defendant said, "I don't dare take you across the state line." Whether or not defendant's apprehension was due to fear of prosecution under the Federal law commonly called the Mann Act does not appear, but his fear was not in keeping with a clear conscience. Neither would it contribute to domestic tranquility.

III.   Defendant's violence toward his wife is corroborated

by his own testimony. He admits swearing at her. He admits shaking her and saying, "Let's reason." At another place in his testimony he said, "People will reason better if they get a good shaking. I shook her." The defendant might have thought such methods effective, but we cannot judicially approve "a good shaking" as a proper approach to reason in domestic affairs.

Defendant describes "blows" as "shoves" and other incidents as exaggerations or accidents.

Further recitation of details is unnecessary. There was ample corroboration of plaintiff's testimony.

■ IV. The mere fact that plaintiff continued to live with defendant until she could no longer tolerate the situation does not indicate condonation.

No new legal problems are involved. Recent decisions have analyzed the problems and provide the answers. Extensive reanalysis and citation of authorities would be repetitious.

■ V. "Cruelty, for the purpose of divorce, can be bodily injury, either actual or menaced. A threat of bodily harm if there is danger reasonably to be apprehended which would have the effect of impairing health would be legal cruelty." Vedepo v. Vedepo, 240 Iowa 895, 899, 37 N.W.2d 916, 918.

"To entitle a party to a divorce under section 598.8(5) it is necessary both elements appear, inhuman treatment and it must endanger life. [Citation] Physical violence is not always necessary. [Citations] The danger to life is sufficient where the danger is reasonably to be apprehended." Payton v. Payton, 252 Iowa 772, 777, 108 N.W.2d 358, 361.

Here there is evidence of physical violence, threats and acts calculated to induce fear.

■ "Conduct of one spouse toward another of the opposite sex, even without adultery, may amount to such inhuman treatment as to give cause for divorce." Rasmussen v. Rasmussen, 252 Iowa 414, 420, 107 N.W.2d 114, 117, and citations.

■ VI. "Corroboration of a complaining party's testimony in a divorce action is a statutory requirement. Section 598.7, 1950 Code. Necessary corroboration may be had from a defend-

ant's own testimony." Lamp v. Lamp, 245 Iowa 52, 58, 60 N.W.2d 844, 848, and citations.

"One of the reasons corroboration is required is to prevent collusion between the parties, it is not necessary that every detail of plaintiff's testimony be corroborated or that such alone sustain the decree. And defendant's testimony may corroborate plaintiff's." Payton v. Payton, 252 Iowa 772, 776, 108 N.W.2d 358, 360, and citations.

VII. Condonation is an affirmative defense. Condonation is not shown by the fact that plaintiff "did not fly from the home at the first, or second, or other instances of inhuman treatment by the defendant, but tried to keep the marriage intact." Bouska v. Bouska, 249 Iowa 281, 286, 86 N.W.2d 884, 887.

"Plaintiff is not required to immediately seek legal relief for fear of losing her cause of action upon the first or any particular subsequent act of misconduct of the type shown here. Bouska v. Bouska, 249 Iowa 281, 285, 86 N.W.2d 884, 886. Continued cohabitation is not necessarily a condonation of inhuman treatment." Payton v. Payton, supra, on page 779 of 252 Iowa.

Plaintiff's right to a divorce under the statute was established. Her testimony was amply corroborated. There was no condonation.

VIII. It appears from the record that at the time of the marriage of the parties the defendant was the record owner of 170 acres of land in Sections 1 and 2, Township Ninety North, Range Three West of the 5th P.M., Delaware County, Iowa.

It appears from the record that subsequent to the marriage of the parties they purchased 140 acres of land in Delaware County described as the Northwest Quarter of the Southwest Quarter of Section 1, the South Half of the Northwest Quarter of Section 1, the Southeast Quarter of the Northwest Quarter of Section 1, and Northeast Quarter of the Southeast Quarter of Section 2, all in Township Ninety North, Range Three West of the 5th P.M., and that such equity as there may be therein is the result of the joint contributions and efforts of the plaintiff and defendant.

It appears from the record that at the time of the marriage

each party contributed to their home and farming activity money, cattle, hogs, furniture and machinery and that such personal property as the parties owned at the time of their separation was the result of the joint contribution and efforts of the parties and the substitution and increase from their original contributions.

Because of the passage of time, personal property owned by the parties in May 1958, when this action was started, would be impossible of identification but an accounting should be made by the defendant. The property should be divided so that the 170-acre farm remains the property of the defendant and that the farm machinery be awarded to the defendant, and that all furniture and household equipment be awarded to the plaintiff, and that the ownership of the 140-acre farm and all livestock, grain, produce, or the proceeds therefrom since May 22, 1958, be awarded one half to the plaintiff and one half to the defendant, with the defendant to make a full accounting of all such assets in his possession since said date.

We further find that an allowance of attorney fees to plaintiff's attorneys in the sum of $750 for the trial of this case in the District Court and the further sum of $500 for trial of this case in the Supreme Court should be made.

It is ordered that this case be reversed and remanded to the District Court for the entry of a decree of divorce in favor of the plaintiff and for such further hearing as may be necessary for the division of property and the fixing of property rights pursuant to this opinion and for the awarding of judgment for attorney fees and costs as directed. It is further ordered that the decree of divorce restore to the plaintiff her maiden name.—Reversed and remanded.

All JUSTICES concur except BLISS, J., not sitting.