CHARLOTTE MARIE HOWE, appellant, v. HUGH EDWARD HOWE, appellee.

No. 50983.

(Reported in 122 N.W.2d 348)

June 11, 1963.

Ralph L. Powers and Russell Jordan, both of Des Moines, for appellant.

Willis & Sackett, of Perry, for appellee.

Moore, J.—In most divorce cases coming to our attention we have the familiar question of whether the evidence establishes cruel and inhuman treatment such as to endanger life as required by Code section 598.8(5). In this case the sole issue is whether plaintiff's life was endangered by the proven cruel and inhuman treatment by defendant. The trial court found against plaintiff on this issue. She has appealed. After a study of the entire record we must disagree with the trial court.

I. The general rules of law applicable here are well

established. Our review is de novo. Rule 334, Rules of Civil Procedure. To entitle a party to a divorce under section 598.8 (5) it is necessary two elements be proved, (1) inhuman treatment and (2) danger to life therefrom. Phillips v. Phillips, 251 Iowa 1310, 1312, 104 N.W.2d 832, 833; Payton v. Payton, 252 Iowa 772, 777, 108 N.W.2d 358, 361; Peitersen v. Peitersen, 253 Iowa 893, 894, 895, 114 N.W.2d 299, 300, and citations.

We have frequently held life may be endangered by impairment of health. Rasmussen v. Rasmussen, 252 Iowa 414, 420, 107 N.W.2d 114, 118; Peitersen v. Peitersen, supra. Also that danger to life is sufficient where the danger is reasonably apprehended. Weatherill v. Weatherill, 238 Iowa 169, 187, 25 N.W.2d 336, 346; Phillips v. Phillips, 251 Iowa 1310, 1313, 104 N.W.2d 832, 833.

By repeated decisions we have held the conduct of one spouse may amount to such cruel and inhuman treatment as to endanger life even though there is no physical mistreatment. Bowles v. Bowles, 248 Iowa 930, 81 N.W.2d 15; Bouska v. Bouska, 249 Iowa 281, 86 N.W.2d 884. Our latest pronouncement on this point is Cimijotti v. Cimijotti, 255 Iowa 77, 121 N.W.2d 537.

Applying these and other well established rules, each action of this kind must rest on the particular facts shown. Precedents are of little value. Baker v. Baker, 252 Iowa 1161, 1163, 110 N.W.2d 236, 237.

II. Plaintiff here contends her life was endangered by both physical and mental cruelty.

Plaintiff and defendant were married in 1958. Two children were born as issue of this marriage, Hugh Shawn, born May 26, 1959, and Rodney Kirk, February 9, 1961. Each from the time of his birth had the care and attention of plaintiff. Defendant makes no charge against her fitness to have their custody.

Plaintiff's complaints of physical abuse by defendant are numerous. Some are corroborated by other witnesses. Many are admitted or undenied by defendant. Plaintiff says about four months after their marriage defendant at Indianola became angry, used profane language, pushed, slapped and knocked her down. She was pregnant at that time. On another occasion she

states he knocked her down and choked her until she was unconscious. She reported this to a relative immediately thereafter. An aunt and plaintiff testify defendant, while in an angry rage at the aunt's home, slapped plaintiff back and forth across her face until she fell to the floor. Plaintiff says while she was pregnant with the second son defendant became intoxicated, called her names, said she was not a fit mother, slapped her back and forth across the bedroom, poured a can of beer on her as she ran downstairs, then pushed her over the side of the porch where she landed on the baby's stroller. Another witness describes the bruises and marks on plaintiff's legs a short time after this episode. Plaintiff testifies:

"One night he came in after I had been in bed and threatened to beat me with his belt. He hit me with the belt, but not the buckle. I became hysterical and he finally stopped. He seemed to enjoy it. I was afraid of him and I am afraid of him now."

Plaintiff and other witnesses describe several other incidents when defendant became angry, loud, profane, threatening, and abusive toward plaintiff.

Defendant admits slapping plaintiff, does not deny knocking her down nor the belt incident. When asked about claimed physical violence usually he answers, "I do not remember". As an example he testifies:

"I do not remember pouring beer on her nor breaking the child's stroller when she fell on it. I deny the ice tea incident. She left home because of her unhappiness ten or eleven times. I kept haunting her about certain things—I won't say what things."

In addition to threats and verbal abuse plaintiff and others testify defendant on many occasions stated he was not the father of the first child and made similar statements about the paternity of the second son. Defendant admits making such statements. Before filing his answer in this case defendant threatened plaintiff he would deny paternity of the second child. When she refused to drop the proceedings he filed such a denial.

On trial he admits accusing her on several occasions of running around but that he had no such evidence. He states he was the father of the first child and that he believed he was the father of the second son. His only explanation is that plaintiff had made statements leading him to doubt the paternity of the children. This she denies except to admit she once repeated his accusation to show him how foolish it sounded.

On cross-examination defendant testifies:

"We had trouble in Indianola in Ella's Cabins. I have a hot temper. I do things when I get mad that I would not do when not mad. I was critical of the way she handled the children and various things. I suppose I nagged her. * * * I did not suspect she was running around with a man. I asked her about it, maybe I was jealous. Lots of times she left because of disagreements. Sometimes I asked her who she had been out with—I was still jealous."

As a result of defendant's conduct plaintiff became extremely nervous, cried a lot and at times became hysterical. Plaintiff says:

"The effect of these acts on me and my health made me terribly nervous and I cried a lot. I was afraid of what he might do to me. And especially after the incident in Indianola when he choked me; I was exceptionally afraid of him after that because I knew what he was capable of, what he could do. I have been separated from him a little over six months and I have been a lot better, not as nervous at all, and a lot happier. I have got a lot more peace of mind. I feel a lot healthier."

Defendant testifies:

"She had hysterics more than once over a lot of different things. Once I thought she was pretending, maybe she was not. I went up to bed and she sat up in bed and started screaming and said 'don't hit me'. I had not hit her. I shook her and she woke up crying. I told her to quit acting like a child."

■ III. Another established rule is that false charges of conjugal misconduct may constitute cruel and inhuman treatment such as to require a divorce. Massie v. Massie, 202 Iowa

1311, 210 N.W. 431; Worthington v. Worthington, 238 Iowa 1044, 29 N.W.2d 186; Levis v. Levis, 243 Iowa 574, 52 N.W.2d 509; Bowles v. Bowles, 248 Iowa 930, 81 N.W.2d 15; Kleinendorst v. Kleinendorst, 253 Iowa 1024, 115 N.W.2d 155. Anderson v. Anderson, 189 Iowa 95, 174 N.W. 665, holds false charges of infidelity made in a pleading constitute cruel and inhuman treatment.

■ The trial court found defendant had been guilty of cruel and inhuman treatment but apparently gave considerable weight to the fact plaintiff returned and lived with defendant after several such acts. It is a proper factor to consider but a spouse should not be punished for sincere efforts to save a marriage. Bouska v. Bouska, 249 Iowa 281, 285, 86 N.W.2d 884, 886, says, "In some cases, continued living with a spouse accused of cruelty may be evidence of lack of fear. Yet this doctrine, carried to an extreme, would penalize the wife or husband who in good conscience makes a sincere effort to keep the marital bark off the rocks of separation. In the case before us, the plaintiff bore much and suffered much before she finally gave up the struggle to keep the ship afloat."

■ ■ In determining whether plaintiff's life was endangered by defendant's cruel and inhuman treatment it is necessary to consider the entire record during their married life and not separate incidents. Murray v. Murray, 244 Iowa 548, 551, 57 N.W.2d 234, 236; Miller v. Miller, 249 Iowa 725, 731, 88 N.W.2d 816, 820; Phillips v. Phillips, 251 Iowa 1310, 1312, 104 N.W.2d 832, 833. The problem for our determination is whether the physical and mental abuse adds up to such cruel and inhuman treatment as to endanger plaintiff's life. Applying this test we hold plaintiff's right to a divorce under the statute is established.

This case is reversed and remanded to the trial court for a decree granting plaintiff a divorce and custody of the two children, subject to reasonable visitation by defendant. We find $30 per week is a reasonable amount of child support which defendant should pay. Additional fees of $400 are allowed plaintiff's attorneys for services in this appeal. Costs are taxed to defendant.

This case is reversed and remanded for decree in conformity with this opinion.—Reversed and remanded.

All JUSTICES concur.