Dorothy May Hancock, appellant, v. Billy J. Hancock, appellee.

No. 51465.

(Reported in 131 N.W.2d 757)

December 15, 1964.

Leo J. Lucier, of Des Moines, for appellant.

Mike Wilson, of Des Moines, for appellee.

MOORE, J.—This is an appeal by plaintiff-wife from a judgment dismissing her suit for divorce based upon inhuman treatment. Defendant has not filed a brief and argument in this appeal. Plaintiff and defendant were married May 29, 1955. Both had previous experience with marriage. Her son and his daughter lived in the home most of the time the parties lived together. They first separated in December 1959.

Plaintiff testified: "I left him prior to that time on December 20, 1959, and started an action for divorce. I later effected a reconciliation with him and went back to him the latter part of March 1960. I left him at that time due to my health and his treatment of me of habitually blowing, beating, slapping me around, declaring I was insane and that I belonged in a mental institution. He was, in fact, very mean. He told me constantly that he was going to put me away in an institution. He held my face up to a mirror and said, 'Look at you. You look like a witch'. He tore my clothes off me and slapped me. It was an extended period of about six weeks. When I left him back at that time, I appeared to have a nervous breakdown. After I had been away from him for two weeks I improved considerably. In fact, I was well. He threatened my parents' life and he threatened mine and I did have a breakdown. * * * I did not prove up on any divorce before. In spite of all those things happening, I went back to him because I loved his daughter very much and I felt these children needed a home.

"He promised me he would never mistreat me or be mean to me again.

"After we went back we fought constantly for four months until I thought I would have to leave him. He said he would not have had me back if I did not have some of his money and if I

were not about to take him to a cleaning financially and I would 'pay for applying for divorce from him'. When I went to him at that time he accused me of having affairs with other men. I became an expectant mother in May of 1960 and he said it did not belong to him; that it was conceived while I was in Des Moines. There is no truth in that. I have not been unfaithful to him. I have never violated my marriage vows, nor transferred my love to another man. * * * During that period of time he grabbed me and slapped me and tore my blouse off of me. During that period he slapped me two or three times.

"In his conversations he liked to talk about sex which happened constantly with me and with all our friends which made me feel like it was jeopardizing my character and embarrassed me.

"Since the first divorce action on a Friday night he picked up an ashtray and threw it at me. That night be grabbed me and shook me with a vicious shake. At that time he said I was crazy and that he would put me away. * * *

"This treatment toward me, the acts, the conversations, the physical treatment all made me fearful of him. I was scared to death and was afraid he would kill me. I was nervous and very upset and I was scared to death. My nervousness was to the extent that I called the doctor and asked him for some nerve pills."

She was in the hospital six or seven days following the separation in December 1959 apparently having suffered a nervous breakdown.

During this separation defendant admitted most of the foregoing claimed acts of misconduct to plaintiff in the presence of one of her witnesses.

Plaintiff's son, Larry, testified: "He held her face up to the mirror and said 'look at you, you look like a god-damned witch', I have heard him curse her and I have heard him threaten to take her life. He used profane language against her quite often."

Plaintiff's mother testified that when she returned home plaintiff was very nervous and cried all the time but after she was away from Mr. Hancock for a while seemed to be much better.

Only defendant testified for the defense. He denied ever

threatening the life of plaintiff or her parents. He did not deny the claimed misconduct on his part prior to the first separation. He stated: "Since the dismissal of my wife's first divorce suit in March of 1960, I never recall any occasions when I struck or beat her."

Defendant admitted the ashtray incident but stated he threw it at a wall near plaintiff.

The trial court's finding of fact number 3 states: "The court has given no consideration to any testimony prior to March 1960, and finds that on said date the parties effected a reconciliation which disposed of all past differences."

With this holding we do not agree. In some cases we have held continued living with a spouse accused of cruelty may be evidence of lack of fear but have consistently held a spouse should not be punished for sincere efforts to save a marriage. Bouska v. Bouska, 249 Iowa 281, 285, 86 N.W.2d 884, 886; Howe v. Howe, 255 Iowa 280, 285, 122 N.W.2d 348, 351.

Apparently the trial court considered the reconciliation as condonation which is not available to defendant here.

Condonation is an affirmative defense which must be pleaded. Nelson v. Nelson, 208 Iowa 713, 716, 225 N.W. 843, 844; Robbins v. Robbins, 234 Iowa 650, 656, 12 N.W.2d 564, 567; Bouska v. Bouska, 249 Iowa 281, 285, 86 N.W.2d 884, 886. See also 17 Am. Jur., Divorce and Separation, section 356; 27A C. J. S., Divorce, section 59. Defendant did not plead nor does the evidence disclose condonation.

Plaintiff was not required to immediately seek legal relief for fear of losing her cause of action upon the first or any particular subsequent act of misconduct as shown here. Duwe v. Duwe, 246 Iowa 1336, 1344, 72 N.W.2d 501, 506, and citations; Payton v. Payton, 252 Iowa 772, 779, 108 N.W.2d 358, 362, 86 A. L. R.2d 416, and citations; Lane v. Lane, 253 Iowa 92, 95, 111 N.W.2d 286, 288.

The entire married life of the parties must be considered in this class of case. This is particularly true when the charge is inhuman treatment which endangers life. Brown v. Brown, 248 Iowa 802, 807, 82 N.W.2d 661, 664, and citations; Howe v. Howe, 255 Iowa 280, 285, 122 N.W.2d 348, 351, and citations.

 We have frequently held physical violence is not necessary in order to meet the requirements of the statute (section 598.8, subsection 5). Any mistreatment which deprives a spouse of needed rest, peace of mind and affects the nervous system to the extent health is undermined, endangers the life as effectively as physical violence. Our recent decision in Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537, 538, analyzes and cites our many holdings on this legal proposition. Reanalysis would be needless repetition.

Considering defendant's conduct toward plaintiff both before and after their first separation we find a persistent pattern of profanity, threats and mental abuse in addition to physical abuse which caused plaintiff a nervous breakdown. We hold defendant's conduct did endanger plaintiff's life. He made no claim of misconduct by plaintiff.

Plaintiff's evidence of inhuman treatment is corroborated, as required by section 598.7, by other witnesses and defendant's testimony.

 We have consistently held corroboration may be furnished by defendant's own testimony. Lamp v. Lamp, 245 Iowa 52, 58, 60 N.W.2d 844, 848; Lane v. Lane, 253 Iowa 92, 95, 96, 111 N.W.2d 286, 288; Cimijotti v. Cimijotti, 255 Iowa 77, 81, 121 N.W.2d 537, 539.

Prior to the marriage plaintiff was operating a sandwich shop. Defendant was engaged in the body and fender repair business. During their marriage they bought a lot for $1250, borrowed $6650 with which they built a new building. Defendant used it in the operation of his business of front end alignment, wheel balancing, painting and auto body repairs. The value of equipment used in this business was estimated at between $4000 and $5000.

At the time of trial plaintiff had in her possession a 1962 Ford Galaxie 500 and defendant had their other car, a 1953 Dodge station wagon. Both were unencumbered.

They had accumulated household furniture which was being used in their home. Plaintiff was not employed outside the home.

Plaintiff estimated defendant's income at $10,000 per year net. His estimate was $3000.

124

Section 598.14 provides: "Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. * * *."

To determine what is "right" always presents a difficult problem in these cases. No two are exactly alike. Precedents are of little value. However, it is our conclusion plaintiff should be given her personal effects, the Ford Galaxie and the household furnishings. Defendant should be given the other property, both real and personal, and be required to pay all outstanding obligations of the parties. Plaintiff should also be allowed $100 per month alimony for a two-year period.

Plaintiff's attorney on this appeal did not represent her in the trial court. The motion for fees which we ordered submitted with the appeal is sustained. Leo Lucier, her present attorney, is allowed a fee of $300. Costs in the trial court and of this appeal are taxed against defendant.

This case is reversed and remanded for decree in conformity with this opinion.—Reversed and remanded.

All JUSTICES concur.