THEODORE BOWMAN, appellee, v. ROSE BOWMAN, appellant.

No. 52169.

NOVEMBER 15, 1966.

Dorothy C. Sauer and Fuerste & Carew, all of Dubuque, for appellant.

Robert L. Oeth and William C. Conzett, both of Dubuque, for appellee.

GARFIELD, C. J.—January 27, 1965, Rose Bowman, who had separated from her husband Theodore, brought action in equity asking that their rights and interests in their dwelling and personalty therein be determined, pursuant to section 597.3, Code, 1962. May 21, 1965, Theodore brought action for divorce from Rose on the ground of desertion (sections 598.8, paragraph 2, and 598.9). The actions were consolidated for trial. From decree granting divorce, requiring husband to pay $120 per month until he reached age 65 for the support of the daughter, age 12, awarding the dwelling and much of the personalty to the husband, the wife has appealed.

Sole issue on this appeal is the wife's contention the property division and provision for child support are inequitable. We must sustain the contention.

Rose, 46 at time of trial in September 1965, left her husband, 62 at time of trial, about May 10, 1963, taking her two children by a prior marriage and Debbie, born April 18, 1953, sole issue of this marriage. April 22, 1963, Rose had sued her husband for divorce. Following trial the court dismissed her divorce action August 31, 1963.

The parties were married May 9, 1952. The husband also had been previously married. At the time of the separation in May 1963 they were living in Dubuque where Theodore worked for the same employer throughout the marriage. Much the most valuable property asset the parties have is their dwelling on Dodge Street in Dubuque, near a shopping center. As witnesses

they agreed the value of the property, then unincumbered, was from $25,000 to $28,000. Title was held by husband and wife as joint tenants.

Aside from a witness called by the husband to corroborate his claim of desertion, he and Rose were the only witnesses. Testimony in the record largely goes to the issue presented on this appeal. There is not a great deal of conflict in it. Before summarizing it we mention the controlling rules of law applicable to the controversy.

I. Code section 598.14 provides, "When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right." Several of our opinions have listed a number of facts to be considered, along with others, in reaching a just and equitable decision upon these matters. Pfab v. Pfab, 257 Iowa 303, 305, 132 N.W.2d 483, 484, and citations; Blaney v. Blaney, 256 Iowa 1151, 1153, 130 N.W.2d 732, 733; Weiland v. Weiland, 255 Iowa 477, 480, 122 N.W.2d 837, 839, 1 A. L. R.3d 377, and citations.

However, these decisions add little to the quoted statute. Weiland and Blaney cases, supra; Rasmussen v. Rasmussen, 252 Iowa 414, 423, 107 N.W.2d 114, 119. We have frequently pointed out that in determining what is "right" in property division and related matters no two cases are exactly alike on their facts and precedents are of little value. Hancock v. Hancock, 257 Iowa 119, 124, 131 N.W.2d 757, 760; Howe v. Howe, 255 Iowa 280, 282, 122 N.W.2d 348, 349. A just determination of such issues is peculiarly dependent upon the facts of the case. Arnold v. Arnold, 257 Iowa 429, 440, 133 N.W.2d 53, 60, and citations; Lessenger v. Lessenger, 258 Iowa 170, 172, 138 N.W.2d 58, 59.

II. When the parties were married the husband, according to his testimony, had a third interest in a home in Dubuque for which he received $2100 to $2200 net about December 1953, six rooms of furniture for which he received about $325, a Chevrolet car and about $500 cash. He testified the car was a 1949 model worth about $800. Rose said it was a 1930 model which of course would be worth much less.

Rose's first husband died about 1950 leaving a new home in Guttenberg, about 40 miles from Dubuque, furniture, a 1949

Pontiac, a government bonus of about $1000 and life insurance of $2000, at least some of which was used to pay indebtedness. Rose became the owner of two-thirds interest in the home. Her two children owned the remaining interest. The furniture and auto were set off to her. This home was sold, she moved to Dubuque where her parents lived, and bought a home there on Davis Street for about $13,000. When the parties were married the husband moved into this home.

Two rooms were finished off in the upstairs of the Davis Street home. Rose's father, a carpenter, did most of the work with such help from Theodore as he was able to furnish. The father also paid for some of the material used in this improvement. After living in the Davis Street home about two years they sold it on contract for about $13,000 and bought a home in Farley, a small town about 20 miles from Dubuque, for $10,800. The deed ran to both husband and wife. Rose's father also furnished most of the labor to improve the Farley home.

After living in the Farley home about three and one-half years it was sold for $14,300 and the present Dodge Street property in Dubuque was purchased for $14,500. The deed was dated February 24, 1958.

Rose's parents furnished valuable financial aid in the purchase of these homes and otherwise. Rose fixed the total at somewhere between $5000 and $10,000. "They would give us money when we had tough going." While the family lived in Farley Rose's mother gave Theodore $1000 to help buy a new car. The car was eventually traded in on a station wagon which in turn was traded in on the 1960 Dodge car he had at time of trial.

Theodore's weekly take-home pay increased from $80 to about $95 from the time of the marriage to the time of trial. Until the divorce trouble arose in the spring of 1963 he turned over nearly all this to his wife who acted as the family treasurer. Since the divorce trouble developed he turned over only about $40 a week to her. Rose received from some government fund (perhaps Social Security) $20 a month for each of her own two children. She had also received $40 a month as surviving widow of her first husband until she married Bowman. She put the government money and what she earned from outside work

in the same common fund from which the family bills were paid. In 1962 Rose earned $1474. Theodore testified she did no outside work until about 1960. Rose sold her 1949 Pontiac car and the proceeds also went into the family fund.

When Rose and the children left the Dodge Street home they lived in an apartment in Dubuque four months and then moved to LaCrosse, Wisconsin, where they still lived at the time of trial. Theodore has continued to occupy the Dodge Street home alone. He testified he had at trial time about $800, his 1960 Dodge car worth about $650, the furniture in the home, his clothing and personal effects. According to him he had also put $165 in a bank account for Debbie and opened a Christmas savings account for her. In the two years four months between the separation and time of trial he contributed $450 toward Debbie's support. She is musically inclined and at time of trial had been taking music lessons.

Rose has had outside employment at least part time in LaCrosse, earning about $45 a week take-home pay. Her son by her prior marriage also had employment in LaCrosse and helped his mother some.

Further details of the evidence need not be recited.

■ III. Notwithstanding the fact Rose was the guilty party in the divorce action we are satisfied that under all the circumstances it is inequitable to deny her a substantial interest in the Dodge Street property which the parties held in joint tenancy. Conduct of the guilty party is not the only matter to be considered in property division and allowance of child support in a divorce action. Contribution of each spouse to the joint accumulations is another such matter. See precedents cited in Division I, supra.

■ Rose, with the help of her parents, is entitled to much of the credit for acquisition of this valuable property. We hold she and appellee are each entitled to an undivided one-half interest therein.

We do not understand Rose is asking for relief here, with reference to the real estate, other than the establishment of her interest therein. It may be inadvisable to sell the dwelling at this time and divide the proceeds and the parties may not favor

doing so. In the event either party deems such sale advisable at this time, the district court may hear and determine the issue following the remand.

So far as we can tell, the decree awards to Rose substantially all the furniture and personal belongings she took with her after leaving the Dodge Street home and also the additional items left there which were hers at the time of the marriage or she had subsequently acquired by gift or otherwise. We think she is entitled to the personalty just referred to. If she contends she has been denied any such items, the district court may also hear and decide such issue following the remand.

IV. As stated, the decree requires appellee to contribute $120 a month for the support of Debbie until appellee becomes 65 years old. Also as stated, he was 62 at time of trial (September 7, 1965) and Debbie was then 12. Thus appellee's obligation to furnish child support under the decree terminates in less than two years from now. We hold appellee should contribute $120 a month for the support of Debbie until she reaches age 18, dies, or marries, whichever occurs first.

The decree is reversed and the cause remanded for further proceedings in harmony with this opinion.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.