Ray Erwin, appellee, v. Evelyn Erwin, appellant.

No. 50065.

(Reported in 105 N.W.2d 489)

OCTOBER 18, 1960.

William H. Wellons, of Muscatine, for appellant.

A. Wayne Eckhardt, of Muscatine, for appellee.

LARSON, C. J.—This motion to release garnishment of wages, as provided in section 642.15, Code of Iowa, 1958, filed by plaintiff on December 17, 1959, and resisted by defendant, is the result of a belated attempt by defendant to collect child support money allegedly due her under a decree of divorce rendered in her favor December 7, 1943, and filed of record July 9, 1945. Under the decree she was to have custody of the two minor daughters and $10 per week support money until they reached age sixteen. Plaintiff was given the right to visit his children once a week under certain conditions. Plaintiff contends, and the trial court found, that by the terms of an oral agreement sometime late in 1945, the defendant waived the provisions of the decree as to child support and the plaintiff gave up his right to visit the children each week at defendant's home and any right to claim them as tax exemptions for income tax purposes. The principal issue herein is whether, under the facts and circumstances as disclosed by the record, such a valid and binding contract existed. We agree with the trial court.

I. It is well settled in this jurisdiction that divorced parents may contract between themselves as to the support of their minor child, if the best interest of the child is not injured thereby. Pappas v. Pappas, 247 Iowa 638, 75 N.W.2d 264, 57 A. L. R.2d 1134, and citations; Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75; 39 Am. Jur., Parent and Child, section 42, page 653; 67 C. J. S., Parent and Child, section 15, page 697.

In Iowa both parents are under a duty to support their minor children and are liable for their support, but when one voluntarily supports the children he cannot recover from the other parent in the absence of an agreement therefor. Addy v. Addy, 240 Iowa 255, 259, 36 N.W.2d 352, 356.

The following facts are undisputed in the record: that for more than fourteen years defendant had made no previous legal attempts to collect the support money; that the girls are now over sixteen years of age and both have been married since October 1958; that they had been adequately cared for in a good home, with proper food, clothing and schooling; that no support payments had been made by plaintiff, but on at least three occasions he had furnished financial assistance toward the care and needs of the children; and that shortly after their divorce decree had been filed in 1945 the defendant married a second time and established a new home in which the girls were reared. It also appears that that marriage existed for about ten years, and shortly thereafter in January 1956 defendant married her third and present husband.

Being a construction worker, plaintiff was away from home a good deal and was in South Dakota when the divorce was granted. He retained Muscatine as his home. He testified his mother kept one of the girls until defendant married her second husband, which was shortly after the decree was filed. He said that shortly thereafter defendant "came down and told me and my stepdad and my mother if I would sign the dependents off my income tax to Mr. Hepker that I wouldn't have to pay that child support." He said defendant wanted to rear the children and, as her husband would not want him around, he never bothered them much. He testified they did not want him to see these children, and that "Mr. Hepker came down and told me not to come up there." He said he was ordered out of the house. While he did not see the children often before, due to his out-of-state work, after defendant married Hepker and took the girls he saw them "about three times a year."

Plaintiff's mother verified this testimony. While she did not recall the date, she did recall that Hepker came down and told him (her son) he was not to see the children any more,

that he did not want Ray down there any more; and that later when she and Ray went to see the girls when they were real sick, Hepker said, " 'I don't want you there either. * * * We don't want you there at all, neither one of you, no more.' " She said she also heard the conversation between her son and Hepker regarding child support. She testified defendant advised them she and Hepker took the girls as dependents and that "they didn't want no support because * * * it caused trouble when Ray came up there all the time." She was uncertain whether these conversations followed or preceded Hepker's demand that plaintiff stay away from their home. Prior to that time Mrs. Hill had had the girls for visits a week at a time. The step-father, also present, largely confirmed this conversation between the parties, said it pertained to support of the children, that defendant said she was married again to a man that could support them and she did not need any of plaintiff's money or any help from anyone; that they wished Ray would not come up there to see the children any more because "Chuck", her present husband, was opposed to it, that he was very jealous and she thought it would make trouble between them. The step-father, Mr. James Sprague, said Ray agreed to do as she desired, and only asked to come to see the children on their birthdays and at Christmas; and that this was agreed to by both.

Defendant denied she waived the support money payments and insisted she often asked plaintiff for money, especially later when she and her second husband were living apart. She said plaintiff threatened her life rather than pay that money, that she did ask him not to come down when drunk, and that was the only condition she or Hepker made to plaintiff. Mr. Hepker was not called to verify that statement. She also said she was afraid to use legal means to collect any support money due her. She wrote plaintiff a letter October 23, 1956, asking financial help due to increased needs of the girls in high school. She wanted $25 per month toward that expense. In rebuttal, the plaintiff stated he had given her $50 just before getting the letter and had advised her his obligations with his own family made such requested aid impossible. He further stated he did not consider the aid he gave defendant was under the divorce decree because

under the oral agreement he had been relieved of making any payments into court.

That there was some agreement or arrangement between these parties is quite clear. As in all disputed oral agreements, its terms are not so clear, but we are satisfied that under the other undenied circumstances there was an intent by both parties to waive the provisions of the divorce decree as to support money and as to the right of visitation. It is unnecessary that the proof of the oral contract be undisputed or be established as an absolute certainty. Reasonable certainty is sufficient. Williams v. Chapman, 242 Iowa 294, 307–309, 46 N.W.2d 56, 63, 64, and citations.

II. These proceedings were in equity. Both parties sought equitable relief below. While our review is de novo, we are justified in giving weight to the findings of the trial court on the fact question as to whether or not there was an agreement between the parties. This is especially true in cases of this nature where the trial court was in a better position than we to decide the veracity of the witnesses. Bell v. Pierschbacher, 245 Iowa 436, 439, 62 N.W.2d 784, 786, and citations; Blum v. Keene, 245 Iowa 867, 899, 63 N.W.2d 197, 214. It saw and heard the witnesses and was best able to give their testimony the proper weight and evaluation. Its determination that there was an understanding and agreement involving the rights under the divorce decree is obviously correct. As to its provisions the truth is not so obvious, giving rise to the court's express regret that such matters were not reduced to writing. We note that plaintiff did testify that "I didn't pay the support money into court because when we came to that oral agreement between the two of us I figured * * * I wasn't supposed to pay it. That was my understanding." If the truth of this statement is accepted, it seems conclusive of the terms of the contract and as to any debt for child support which would support a garnishment in this case. We are satisfied as a matter of fact that such was the agreement between these parties, and that subsequent events did not alter but strengthened that conclusion.

III. Defendant contends that the trial court did not use the proper degree of proof and found plaintiff had established

his case by a preponderance of the evidence, not by clear, satisfactory and convincing evidence. In re Estate of Dolmage, 204 Iowa 231, 237, 213 N.W. 380; Drake Law Review, Volume 9, No. 2, page 86. Without going into a discussion as to when such degree of proof is and is not required in equity matters, we note that the short answer to that complaint is that such issue is not important here. This case is triable de novo and we must determine the question for ourselves. Peddicord v. Peddicord, 242 Iowa 555, 561, 47 N.W.2d 264.

IV. Defendant further contends that if the agreement did exist it was intended to cover only the time she lived with Mr. Hepker, that after her separation from him the agreement ended and the terms of the decree were in force again. This would not be the case unless the agreement so provided, and there is nothing to sustain that position. Merkel v. Merkel and Pappas v. Pappas, both supra. It is true that, had the need occurred after defendant's second divorce, plaintiff could have been required to further contribute to the children's support. However, this would be true whether the waiver was or was not valid and would require a proper application filed in the case. Pappas v. Pappas, supra. As such occasion did not arise, that issue is not before us.

V. Of course any valid agreement by a party to a divorce to waive support money judgment must be based upon good, adequate and sufficient consideration. Substantial consideration for her waiver can be found in the surrender of his right under the divorce decree to see the children weekly at her home and to claim any tax exemption benefits regardless of any help that he might give toward their support. It is not established that plaintiff failed to perform these agreements. While defendant claimed she had the right to tax exemptions because she furnished more than 50% of the support, yet it was possible that plaintiff, by the payment of $10 per week plus other contributions to the support of the girls, could have successfully challenged her claim to such exemptions. Furthermore, surrender of these rights would indicate detriment to defendant, recognized as an important item in consideration. Wright v. Iowa Southern Util. Co., 230 Iowa 838, 841, 298 N.W. 790;

17 C. J. S., Contracts, section 70, page 420; 12 Am. Jur., Contracts, section 79, page 570.

VI. It would serve no useful purpose to discuss all the evidence and contentions made concerning this alleged agreement. The excuses offered by defendant to justify her delay in attempting legal action to collect the support money under the decree are, as the trial court said, very weak and are not persuasive. Indicative of the arrangement is the great delay by defendant in seeking legal means to collect the support money. It is most unusual to attempt to exercise such a right, if it existed, after the children have been reared and the need has been extinguished. This circumstance must be considered, and it seems quite persuasive. We are satisfied defendant was not afraid of plaintiff, but it is not so clear that a recent attempt to force her latest husband to pay child support did not give her the idea that she could recover the sums provided in the decree, which had not been modified by direct court action.

In Merkel v. Merkel, 247 Iowa 495, 499, 73 N.W.2d 75, 77, we considered a like failure, and as to that matter we said: "Perhaps it is also true the same result is obtained as though a regular proceeding to modify the divorce decree had been pursued, but there seems no compelling reason or authority to demand that such release or satisfaction of child-support payments under the original decree needs the formality of a modification."

Of course much of this controversy would have been eliminated if either party had gone to the trouble of having the divorce decree modified to fit the changed circumstances.

It must be concluded that if the agreement and its terms were satisfactorily established, there can be no question but what the debt did not exist at the time the execution and garnishment were obtained.

The trial court in its conclusion found "a valid contract" had been established by "rather clear and convincing" evidence, and we are forced to the same conclusion. Its order releasing the garnishment of plaintiff's wages and providing "that the requirements in the original decree of divorce entered in this cause on the 9th day of July, 1945, for the payment of Ten

($10.00) Dollars per week for child support are hereby released and the judgment entered therein against plaintiff for child support is hereby released and satisfied", must be and is affirmed.—Affirmed.

All JUSTICES concur.