BURDETTE BURRELL, appellee, v. BETTY J. BURRELL, appellant.
(In re Adoption of Kathleen Lynn Burrell)

No. 51268.

(Reported in 127 N.W.2d 78)

MARCH 10, 1964.

REHEARING DENIED MAY 5, 1964.

Whicher & Yaneff, of Sioux City, for appellant.

Sifford, Wadden & Davis, of Sioux City, for appellee.

MOORE, J.—June 13, 1958, Burdette Burrell obtained a divorce from his wife, Betty J. Burrell. The decree approved the terms of the parties' stipulation. It awarded the care, custody and control of their child Kathleen (Kathy), born October 3, 1953, to the mother eleven months and "full custody" to the

father for one month each year, allowed the father to take Kathy two weekends per month commencing Friday evening and ending Sunday evening prior to her normal bedtime and ordered the child not be removed from Iowa except for temporary sojourns. It also provided that when the child reached age 15 if she so chose the father was to have custody.

Burdette was given the home owned by the parties in Sioux City. Betty was given the household furniture and appliances and their Mercury automobile. Burdette was ordered to pay the balance of about $1500 owed on the car.

Burdette was ordered to pay $75 per month for six months following the decree and $50 per month thereafter, for the care, support, maintenance and education of Kathy and in event of her serious illness to pay half of the medical expenses.

The tension between Burdette and Betty after the divorce became worse, rather than better. Many arguments and disagreements resulted over child support, custody and visitation provisions of the decree. In May or June 1960 Burdette ceased paying child support and the exercise of his regular visitation and custody rights. The reasons therefor constitute one of the primary issues of the litigation now before us and will be detailed and considered later.

In December 1962 Burdette filed an application to modify the decree seeking relief from unpaid support money based on a claimed agreement for waiver and release thereof and asking to have future payments placed in trust for the benefit of Kathy.

Betty's resistance denies generally this application and states if there was any agreement to waive child support it was based upon mutual agreement between the parties whereby Burdette waived his visitation rights in return for her waiver of child-support money and that said agreement was to continue until the child reached her majority.

By cross-application for modification Betty alleges a change of circumstances and the best interest of the child require a denial of Burdette's continued visitation and custodial rights.

January 4, 1963, Claude Finley, Jr., whom Betty married December 5, 1959, filed his petition to adopt Kathy. Betty's consent is made a part thereof. Burdette's answer asserts that with-

out his consent the adoption could not be granted, Kathy's best interest would not be served thereby and denies generally the allegations of the adoption petition.

By agreement the cases were consolidated for trial and all issues raised, including those in the adoption proceeding, were submitted to the trial court at the same time.

The trial court entered separate decrees in the divorce and adoption cases. The court found Betty had waived the unpaid child support but denied Burdette's request to have the future payments put in trust. Betty's application was denied except the weekend visitations were changed from two per month to one every six weeks. Claude's petition for adoption was denied.

Betty and Claude have appealed. They assign and argue several propositions but their primary contention is that the adoption should be granted. The cases remain consolidated and have been submitted to us together.

We have and will continue to use first names for the purpose of brevity and clarity.

I. Burdette under his first brief point contends that while the action for modification of the divorce decree is reviewable de novo, the adoption proceeding is reviewable *as a law* action. He properly points out findings of fact in law actions are binding on us if supported by substantial evidence. Authority for this proposition need not be cited. See rule 344(f)1, Rules of Civil Procedure. However this rule is of no avail to him. In re Adoption of Perkins, 242 Iowa 1374, 1378, 49 N.W.2d 248, 250, holds adoption proceedings are cognizable in equity and are tried de novo by us. We reject the suggestion we adopt the dissenting opinion of Justice Smith in the Perkins case as to this question. We must observe also these consolidated cases were tried as equitable proceedings. Burdette is attempting for the first time to raise a new issue here. Under well established rules he is not permitted to do so.

All these proceedings being in equity we review them de novo. We are not bound by the fact findings of the trial court but give weight to them when considering the credibility of witnesses. Rule 344(f)7.

II. Following the divorce Burdette made the payments as

they became due on the Mercury and the child-support payments until May 1960. Sometimes he was late and on occasions paid in advance. He exercised his weekend visitation rights and had Kathy for two two-week periods in 1960 and one such period in 1959. On one he took Kathy, her paternal grandmother and other members of his family on a fishing trip to Minnesota. He was generous in buying toys and clothing for her.

Constant strife and difficulty developed between Burdette and Betty. It became worse after Betty's marriage to Claude. Money and visitations gave cause for real bitterness. Both were at fault. Betty "decreed" no visits if any money was owing. She was extremely critical of Burdette's care of Kathy. She made no secret that she wanted him to cease taking Kathy and on several occasions told Burdette and others she would waive child support if he would cease. Several arguments between them took place in Kathy's presence. They adversely affected Kathy emotionally to some extent. Burdette testified he decided to try such an arrangement to see if the frequent scenes could be avoided. Thereafter he visited Kathy at school and places away from Betty. He bought Kathy Christmas and birthday presents and continued to show his love and affection for his child.

Immediately after their marriage Claude and Betty purchased a two-bedroom home in Sioux City where Kathy lived under pleasant surroundings. Both worked but spent much time with Kathy. Burdette makes no claim of improper care or attention of Kathy in the home. As the trial court found, the evidence clearly shows mutual love and affection between Betty, Claude and Kathy and likewise between Burdette and Kathy.

Burdette married Muriel Trylia, a widow with two children, August 6, 1960. She had many contacts with Kathy before and after her marriage to Burdette. No complaint is made against Muriel or the farm home at Rembrandt where Burdette, Muriel and the two children have lived since June 1961.

III. The trial court found an agreement had been entered into by Burdette and Betty exchanging liability for support money for visitation and custody rights but not on any permanent basis. With the court's finding and holding of no liability on Burdette to Betty for the unpaid support money, we agree.

The trial court properly ordered resumption of the payments and refused Burdette's request they be held in trust.

It is now well settled divorced parents may contract between themselves as to child support, if the best interest of their child is not injured thereby. Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75; Pappas v. Pappas, 247 Iowa 638, 75 N.W.2d 264, 57 A. L. R.2d 1134; Erwin v. Erwin, 251 Iowa 1344, 105 N.W.2d 489; Sorenson v. Sorenson, 254 Iowa 817, 827, 119 N.W.2d 129, 135, and citations.

IV. Code section 598.14 provides:

"Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"*Subsequent changes may be made by it in these respects when circumstances render them expedient.*" (Emphasis ours.)

We have discussed these provisions many times. We have repeatedly held the divorce decree is final as to the circumstances then existing. It can be modified only if applicant has carried the burden of proving by a preponderance of the evidence subsequent conditions have so changed that the welfare of the child demands such modification. Goodrich v. Goodrich, 209 Iowa 666, 228 N.W. 652; Jensen v. Jensen, 237 Iowa 1323, 25 N.W.2d 316; Blundi v. Blundi, 243 Iowa 1219, 55 N.W.2d 239; York v. York, 246 Iowa 132, 67 N.W.2d 28.

In Neve v. Neve, 210 Iowa 120, 125, 126, 230 N.W. 339, 341, we said:

"Mere subsequent facts and circumstances are not enough. The subsequent facts and circumstances must be of such character as to render expedient a change in the original judgment and decree. Thus appellant must prove that such subsequent facts and circumstances affect the well-being of the children, and demand a change in their custody. Their 'best interest is paramount to the rights' of either father or mother."

Betty's determined efforts to terminate Burdette's visitations no doubt would serve her convenience but that is of little importance here. We have held many times the welfare of the child is the controlling consideration and is superior to the claim

or convenience of either parent. Daniels v. Daniels, 145 Iowa 422, 124 N.W. 169; Freese v. Freese, 237 Iowa 451, 22 N.W.2d 242; Jensen v. Jensen, and York v. York, both supra.

Fitch v. Fitch, 207 Iowa 1193, 1197, 224 N.W. 503, 504, states:

"Visitation or the denial thereof should not be made to appease one parent or punish the other. Such right of visitation should be allowed or denied, according to what is best for the child. Its welfare must receive paramount consideration. * * * Unless these visitations with the father will in some way injure the child, they are not to be prohibited, under the facts and circumstances of this case. The associations between father and daughter should not be terminated merely because alimony is not paid. The good there is in the father ought to be afforded the child, and, in addition to that, the little girl is entitled to have whatever benefit there may be in the continued acquaintance and association with her grandparents. Denial of the father's visitation may make impossible or unpleasant such desirable relationship with the grandparents."

In our recent case of Willey v. Willey, 253 Iowa 1294, 1302, 115 N.W.2d 833, it is said:

"The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless the court is convinced such visitations are detrimental to the best interests of the child. In the absence of extraordinary circumstances a parent should not be denied the right of visitation. It is a right which, unless specifically denied by the court, can be enforced by right of habeas corpus."

Here the record fails to disclose any reason why Kathy's visitations with her father would be detrimental to her best interest. On the contrary it appears she may greatly benefit therefrom. She should be given the opportunity to better know her father, paternal grandmother and other relatives.

We agree with the trial court's modification order except the one-month custody provision should be reduced to two weeks, to be taken during the summer school vacation. For that period Burdette should not be required to pay child support.

V. Adoptions and the procedure therefor are statutory

and are now found in chapter 600, Code of 1962. Section 600.3, omitting immaterial parts, provides: "* * * The consent of both parents shall be given to such adoption * * * unless the parents. are not married to each other * * * or unless one or both of the parents have been deprived of the custody of the child by judicial procedure because of unfitness to be its guardian. If not married to each other, the parent having the care and providing for the wants of the child may give consent. * * *."

It is not contended Burdette has been deprived of the custody of Kathy by any judicial procedure because of unfitness to be her guardian. Indeed by the stipulation and divorce decree he is granted her full custody part of the time as well as visitation rights.

Claude, aided by Betty, contends Burdette's consent to the adoption is not required. He asserts Betty is the parent having the care and providing for the wants of the child and only Betty's consent is necessary. He relies on In re Adoption of Alley, 234 Iowa 931, 14 N.W.2d 742; In re Adoption of Karns, 236 Iowa 932, 20 N.W.2d 474, and In re Adoption of Chinn, 238 Iowa 4, 25 N.W.2d 735.

In the Alley case the divorce decree awarded to the mother " 'the absolute care, custody and control' " of the children. No rights of visitation nor other rights over the children were reserved to the father. The divorce petition alleged he was not a fit and proper person to have the custody and control of the children. The mother had the exclusive care of the children. She had provided for their wants to the exclusion of the father, who had contributed nothing for them since the divorce. Under these facts we held only the mother's consent to the adoption by the stepfather was required. Our opinion carefully distinguishes the holding with that of Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N.W. 401, which will be discussed later.

The Karns case involves the validity of a decree of adoption to which the father did not consent. Louis Karns on October 1, 1940, obtained a divorce from his wife, Norma. March 1, 1941, the divorced wife gave birth to a baby girl. The divorce decree makes no reference to the unborn child, to any right of custody or duty of support. Later the stepfather, with the consent of

the mother, adopted the child. She had care, custody and control of the child at all times. The father's offer of some child support was not accepted by her. Under the facts we held she was the parent having the care and providing for the wants of the child and the father's consent was not required.

In the Chinn case the mother, in conformity to the stipulation, was awarded the permanent care and custody of the child with certain visitation rights granted to the father. The father was not required to pay any support money nor did he do so at any time after the divorce. He was not required nor did he exercise any parental duties. He had not visited the child. Again after distinguishing the facts from those in Rubendall v. Bisterfelt, supra, we held the mother was the parent having the care and providing for the wants of the child and the father's consent to the adoption was not required.

These three cases are readily distinguishable on the facts with Rubendall v. Bisterfelt, supra; In re Adoption of Perkins, 242 Iowa 1374, 49 N.W.2d 248, and the case at bar.

In the Rubendall case the divorce decree awarded the custody and control of the child to the mother, granted visitation rights at reasonable times to the father and ordered him to pay $10 per month child support. The opinion does not disclose whether he visited the child or paid any support money after the decree. At page 1390 of 227 Iowa, and page 402 of 291 N.W., we said:

"However, the record shows the parties had stipulated that in case a divorce was granted appellant would contribute to the support of the child and should have the right of visitation. The decree gave effect to these provisions, thus specifically recognizing appellant's rights and his engagement to assist in providing for the wants of the child in the future. Under the circumstances it cannot be said the mother was the parent who provided for the wants of the child to the exclusion of appellant."

We held the adoption allowed by the trial court void for want of the father's consent.

In the Perkins case, as per stipulation, the divorce decree gave the custody of the parties' two children to the mother with

visitation rights at reasonable times to the father. The father was ordered to pay $60 per month child support until the youngest child reached the age of eighteen or until the mother remarried. The mother was also given a residence property in Ames, upon which there was a mortgage. Shortly after the divorce she remarried and moved to a farm near Jewell. The father had made the child-support payment until her remarriage and then discontinued doing so. When the father attempted to visit the children at the farm the mother advised him he was not wanted there and that he could not come. On one occasion the father bought a Palomino pony for one of the boys and had it delivered to the farm. We followed the Rubendall case and held under the facts no adoption to the stepfather could be granted without the father's consent.

The facts here are much stronger than those in the Rubendall and Perkins cases. We agree with the trial court that, under the facts without Burdette's consent, no adoption decree could be entered.

Our ruling is decisive of the adoption matter. We find it unnecessary to discuss further the question of the child's welfare and other defenses raised by the natural father.

Affirmed in the adoption matter.

The decree in the divorce case is modified as stated in the last paragraph of Division IV of this opinion, and as thus modified is—Affirmed.

All JUSTICES concur.