ALICE MARIE SCHOFIELD, appellant, v. LESTER HOWARD SCHOFIELD, appellee.

No. 52504.

(Reported in 149 N.W.2d 810)

APRIL 4, 1967.

Shaff & Farwell, of Clinton, for appellant.

Holleran, Holleran & Shaw, of Clinton, for appellee.

BECKER, J.—This is an action for child support payments based on a divorce judgment of the District Court of Douglas County, Kansas. Defendant alleged that by oral contract plaintiff agreed to release defendant from liability for support of their minor son by satisfying the child support judgment in Kansas and assuming support of the minor child herself. The trial court found there was a valid Kansas judgment but there was also a subsequent agreement between plaintiff and defendant by virtue of which defendant was relieved of child support from and after August 1, 1963. Judgment was entered for payments accrued to that date with interest. Plaintiff appeals.

I. In Bouska v. Bouska, 249 Iowa 281, 288, 86 N.W.2d 884, we said: "In Iowa, parents are equally liable for the support of their minor children. But they may contract between themselves as to liability for such support, and equally the court may order either to furnish it and to hold the other free from liability therefor. It is true a parent may not be entirely relieved from such liability; the public policy of the State forbids. But as between themselves one may be held liable and the other relieved, and such an agreement or decree will be binding, at least to the extent of the resources of the parent so obligated. Pappas v. Pappas, 247 Iowa 638, 75 N.W.2d 264, 266. See also the cases therein cited, especially Cushman v. Hassler, 82 Iowa 295, 297, 47 N.W. 1036, 1037."

In Sorenson v. Sorenson, 254 Iowa 817, 827, 119 N.W.2d 129, we considered a claimed oral contract which defendant maintained released him from liability for child support. That case was tried in equity. The trial court found that the contract was not established. We agreed. In doing so, we said:

"The third proposition argued by defendant is that the evidence establishes a binding oral agreement between the parties releasing him from child support. In Erwin v. Erwin, 251 Iowa 1344, 1345, 105 N.W.2d 489, 491, it is said:

. " 'It is well settled in this jurisdiction that divorced parents may contract between themselves as to the support of their minor child, if the best interest of the child is not injured thereby. Pappas v. Pappas, 247 Iowa 638, 75 N.W.2d 264, 57 A. L. R.2d 1134, and citations; Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75; 39 Am. Jur., Parent and Child, section 42, page 653; 67 C. J. S., Parent and Child, section 15, page 697.'

"At page 1348, 251 Iowa, page 492, 105 N.W.2d, it is said:

" 'It is unnecessary that the proof of the oral contract be undisputed or be established as an absolute certainty. Reasonable certainty is sufficient. Williams v. Chapman, 242 Iowa 294, 307–309, 46 N.W.2d 56, 63, 64, and citations.'

. "In Merkel v. Merkel, supra, the facts were undisputed. A written agreement was shown. In Pappas v. Pappas, supra, a written receipt and statement was established. In Erwin v. Erwin, supra, several persons testified to the agreement releasing the father from payment of child support. In each of these cases we held the proof sufficient."

██ II. Plaintiff does not quarrel with the foregoing principles but strongly maintains that defendant did not prove his case of express oral contract. In Siebring Mfg. Co. v. Carlson Hybrid Corn Co., 246 Iowa 923, 930, 70 N.W.2d 149, we quoted In re Estate of Newson, 206 Iowa 514, 518, 219 N.W. 305, 307:

"The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances. These may be shown by circumstantial evidence, or by the admission of the party to be charged. Ball v. James, 176 Iowa 647, 655; Hankins v. Young, 174 Iowa 383, 392; Spicer v. Administrator of Estate of Spicer, 201 Iowa 99, 101; Ridler v. Ridler, 93 Iowa 347; 13 Corpus Juris 767, 768; Franklin v. Tuckerman, 68 Iowa 572.

"Acceptance may be shown by conduct or by performance communicated to the promisor. Franklin v. Tuckerman, 68 Iowa 572; Hankins v. Young, 174 Iowa 383, 392; 6 Ruling Case Law 587, 605."

III. The parties were married August 21, 1955, and divorced December 5, 1959. One boy was born of the marriage.

The divorce decree provided for $15 per week child support to be paid to plaintiff who had custody. Defendant was in the service at the time of the divorce. Child support payments were met by allotment until he returned from the service in June 1962. Since that time only $375 has been paid toward the support of the boy.

Plaintiff remarried in 1961. Defendant visited his son after coming out of the service. The parties discussed visitation rights in connection with the boy but apparently were unable to agree on what was proper. Defendant's evidence, nearly all of which is controverted by plaintiff, would support the following findings of fact.

At the time of defendant's first visit the matter of Robert Bogart, plaintiff's second husband, adopting the boy was discussed but defendant refused his consent.

At the time of another visit to the boy by defendant in February 1963 plaintiff wanted the adoption "and that was the only thing she wanted." Defendant testified that at this second meeting plaintiff made it clear she did not want anything but the adoption and she was not interested in the money. Payment was behind at that time. Plaintiff at that time did not want defendant visiting the boy.

In May of 1963, a summons from a Missouri court concerning collection of the back child support payments was served on defendant's mother in his absence. Defendant states that he immediately called plaintiff. The pertinent part of that conversation follows:

"Q. And what did she say? A. She said yes, she had a summons out for this back child support, and I asked her just what exactly did she want and then she proceeded to make it quite clear that there was only one thing she wanted and this was an adoption. And, it was pretty evident to me that the—that this pressure she was trying to bring on this summons was an attempt to force me to sign this thing. She had mentioned it several times and brought it up and she got to the point where she was trying to put some pressure on me.

"Q. To the best of your recollection, what were the words she used in this matter? A. She said that she did not want the money, that that was not her concern. She said, 'You know what I want. There is only one thing I want and that's this adoption—consent for adoption.' And I said, 'Okay, you have your attorney draw it up and Ill sign it.'"

Defendant said that he received the prepared "Consent of Natural Father to Adoption" by mail from plaintiff's attorney, signed it, had it notarized and returned it to the attorney in late July 1963. It was a straight consent document and made no mention of the claimed relief from support obligations. Defendant heard no more from plaintiff until 2½ years later in November 1965 when plaintiff was divorced from her second husband, Robert Bogart. Plaintiff then called defendant to remind him of his obligation to support his son. Defendant denied this obligation in light of his claimed agreement. This action was commenced in May 1965 after some effort was made to revive the 1963 action in Missouri.

The boy never was adopted by Mr. Bogart. Defendant says he had no knowledge of the failure to follow through on the consent to adoption until the November 1965 telephone call.

Plaintiff denied ever telling defendant that she was interested only in the adoption and not in the money. She recalled the telephone conversation referred to by defendant but could not recall all of it. She did recall that in that telephone conversation the subject of adoption was mentioned but that defendant asked if "we would adopt the boy and I said not at this time and he made the remark to the effect that he couldn't live his life for someone else and the boy was just holding him back and things to that effect."

Plaintiff's Kansas attorney, Mr. Southhall, also testified. He stated that in 1963 he started proceedings against defendant to collect back support money in Missouri. Defendant then contacted him and wanted to know how he could be relieved of the burden of child support payments.

Mr. Southhall said he told defendant that nothing could be done to relieve him of paying the back support payments but

that a legal adoption would relieve him of future support payments. Plaintiff's attorney then states that he prepared the consent to adoption at defendant's request, defendant took it with him and it was returned by mail, signed and notarized, July 30, 1963. The attorney notified plaintiff that he had the consent and retained it in his files. Mr. Southhall stated that he had a contingent financial interest in the outcome of this litigation. Plaintiff and her attorney were plaintiff's only witnesses.

Defendant and his present wife were married in February 1964. They have three children. She testified that in March of 1963 she was present when plaintiff and defendant discussed visitation rights to which plaintiff objected. Plaintiff was quoted as saying at that time, "So you might just as well sign this adoption so that Bob [Bogart] can take over as his full father the way he wants to."

Witness Beverly Houser testified she was a friend of both plaintiff and defendant and that plaintiff had told her that she wanted her husband to adopt the boy. Witness Houser also testified that plaintiff's reputation for moral character is not good; that she is a known liar and this is also her reputation for truth and veracity. On the other hand witness Houser admitted that she was with defendant before his divorce "in the company of other people and it was turned into a dirty nasty mess." This seems to have been alleviated somewhat by the fact that she took plaintiff into her home after the second divorce and within a year of trial. At any rate this witness claims to be still friendly with both parties.

We recite this interesting, if uninspiring, evidentiary detail to emphasize the importance in this case of the trial court's factual determination. This was an action at law tried to the court. Findings of fact are binding on us if supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure.

The crucial finding by the trial court was couched in the following terms: "[T]he Court finds that a reasonable interpretation of the evidence and the circumstances under which various statements were made, establishes that the plaintiff was in the year 1963 very anxious to secure at the hand of the defendant

his consent to the adoption of their minor child by her then husband. Her statements on the subject heretofore set forth considered in light of the testimony of her attorney, Mr. Southhall, led the Court to believe that the defendant signed the consent to adoption in July of 1963 for the purpose of avoiding further payments of support money, and with the understanding that they would be done away with."

If defendant and his witnesses are believed the evidence supports the foregoing conclusion. Additional support for such finding is that immediately after delivering the consent to adoption to plaintiff defendant was no longer asked by formal proceedings or otherwise, for support money. He was not contacted at all until November of 1965, 2½ years later, when plaintiff telephoned him to remind him of his duty to support the boy. That this telephone conversation coincided exactly with plaintiff's divorce from her second husband would appear to be an important circumstance. Defendant had agreed to consent to the second husband adopting the child, he signed a consent to that effect and thus gave up valuable legal rights. See Burrell v. Burrell, 256 Iowa 490, 127 N.W.2d 78. No further demand for support money was forthcoming until plaintiff divorced the second husband—no adoption having intervened. The trial court could well have believed that plaintiff fully intended that Mr. Bogart adopt her child. For some reason the adoption was not completed and plaintiff then sought to turn back to defendant because, while she had the consent to adoption, she and her second husband had not used it. The trial court in effect found that the oral contract was complete and plaintiff could not now set it aside.

Plaintiff's explanation that for 2½ years she did not know defendant's whereabouts apparently did not ring true to the trial court. We agree.

IV. The written judgment ended with the following reservation:

"The Court might state the holding of this Court is bottomed upon a theory that a binding agreement was made as between the plaintiff and the defendant, which denies in this action

plaintiff's right to receive a part of the support money that she requests, and is not a denial to the plaintiff to recover the necessary support money for the care and support of the child in the future where the need is made evident."

This last cautionary finding is fully justified by our holdings in Addy v. Addy, 240 Iowa 255, 36 N.W.2d 352, and Gerk v. Gerk, 259 Iowa 293, 144 N.W.2d 104. See also Keefe v. Keefe, 259 Iowa 85, 143 N.W.2d 335.

■ Upon proper showing, support for the parties' child may still be ordered from the father either on the basis of statutory duty, Keefe v. Keefe, supra, or on the basis of common-law duty, Gerk v. Gerk, supra. The principle in the Keefe case is not limited by the fact that the case involved spousal, rather than parental, support.

■ V. One other contention of plaintiff should be noted. She states that an oral contract requires corroboration by independent and disinterested testimony, and cites Sorenson v. Sorenson, supra, as sole authority. We do not so construe the Sorenson case. We there held that we agreed with the trial court that defendant had not proved an oral contract, we did not say that plaintiff's testimony, if believed, would not be sufficient. The requirement for corroboration is usually statutory and is confined to specific situations. We discover no authority for the proposition that in order to establish an oral contract a party must be independently corroborated. While it is undoubtedly wise to furnish corroboration whenever possible, such corroboration is not required here as a matter of law. We should add that we think there was substantial corroboration here in any event.

On appeal both parties have presented their case without reference to Kansas law. We have therefore assumed that no conflict of laws question is involved in this case and have decided the case under Iowa law as briefed and argued.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.