Mary A. DENNING, Appellant,

v.

James T. DENNING, Appellee.

No. 54355.

Supreme Court of Iowa.

March 11, 1971.

Napier, Napier & Wright, by William H. Napier, Fort Madison, for appellant.

Fehseke & Fehseke, by R. L. Fehseke, Jr., Fort Madison, for appellee.

RAWLINGS, Justice.

Plaintiff mother seeks determination, by declaratory judgment, regarding defendant father's obligation for past due child support allegedly owing under a prior divorce decree. Defendant resists, asserting no support money is owing because of a modifying post decretal oral agreement between him and plaintiff. Trial court held adverse to plaintiff and she appeals. We reverse.

By the original decree entered in this case, these parties were divorced and custody of two minor sons granted plaintiff, with judgment against defendant in the sum of $90 each month for child support. December 10, 1954, this allowance was apparently modified and defendant ordered to pay $80 per month.

Defendant contends he and plaintiff verbally agreed, sometime prior to 1959, the support payments would be reduced to $7.50 a week for each boy, and at all times thereafter defendant paid accordingly. Plaintiff denies any such agreement and regularity of payments. Other relevant facts will be later considered.

As best we can determine defendant's counter application for modification of the aforesaid decree was contemporaneously submitted and determined favorably to him. On appeal, plaintiff challenges only the denial of declaratory relief sought by her in

this equity action. We are accordingly restricted. Ia.R.Civ.P. 344(a) (4) (Third).

I. Under existing circumstances our review is de novo. Ia.R.Civ.P. 334; Bjork v. Dairyland Insurance Co., 174 N.W.2d 379, 382 (Iowa). See Ia.R.Civ. P. 344(f) (7); Erwin v. Erwin, 251 Iowa 1344, 1348, 105 N.W.2d 489.

II. Basic principles pertinent to the instant issue are set forth at length in Schofield v. Schofield, 260 Iowa 565, 566–567, 149 N.W.2d 810, and need not be repeated.

In essence we there held, (1) divorced parents may contract between themselves as to support of their minor children, provided best interests of the children are not thereby injured; (2) proof of such an agreement need not be undisputed or established as an absolute certainty, reasonable certainty being sufficient; (3) existence of the mutual understanding may be implied from conduct and circumstances shown by admission of the party charged or circumstantial evidence. See 2 Nelson, Divorce and Annulment, (2d ed.), § 15.58; 46 Iowa L.Rev. 675. But see The Code 1971, Section 598.21; Stubbs v. Hammond, 257 Iowa 1071, 1075, 135 N.W.2d 540; Helton v. Crawley, 241 Iowa 296, 310–315, 41 N.W. 2d 60; Brin v. Brin, 240 Iowa 659, 663–664, 37 N.W.2d 261; Addy v. Addy, 240 Iowa 255, 259, 36 N.W.2d 352; Hopping v. Hopping, 233 Iowa 993, 996, 10 N.W.2d 87; French v. Johnson, 16 Utah 2d 360, 401 P.2d 315, 316; 6A Corbin on Contracts, § 1474; 27B C.J.S. Divorce § 321(1) (b) at 635; 2 Nelson, Divorce and Annulment, *supra*; Annot. 57 A.L.R.2d 1139, 1152–1159.

III. In this jurisdiction it is understood an agreement of the nature described above, to be valid, must be founded upon good and sufficient consideration. Herb v. Herb, 251 Iowa 957, 959–960, 103 N.W.2d 361. See Andersen v. Andersen, 89 Idaho 551, 407 P.2d 304, 307 (Idaho); Annot. 57 A.L.R.2d 1139, 1141–1143.

The foregoing concept is questioned in 46 Iowa L.Rev. 675, with this alternative suggestion at 679: "A more desirable solution to the whole problem of the enforceability of these agreements to reduce the amount of decretory support payments would premise the denial of recovery to the mother upon an equitable estoppel rather than a contractual basis."

Be that as it may, since defendant in the case before us has never at any time pled, urged or argued any such theory, it cannot be presently considered or applied. Ia.R.Civ.P. 344(a) (4) (Third); Farm Service Co. of Emmetsburg v. Askeland, 169 N.W.2d 559, 560 (Iowa). See also Alexander v. Randall, 257 Iowa 422, 427–428, 133 N.W.2d 124; 31 C.J.S. Estoppel § 153(1) (3) (4); 28 Am.Jur.2d, Estoppel and Waiver, §§ 135–137.

IV. Assuming, without determining, these parties entered into a verbal agreement as urged by defendant, it is unenforceable if devoid of the aforesaid requisite consideration.

Herb v. Herb, supra, involved an application by the former husband to stay a judgment based execution for child support, and reduce the allowance granted by a prior divorce decree in accord with a claimed oral understanding between the parties. Addressing itself to the matter at hand this court said, loc. cit., 251 Iowa 960–961, 103 N.W.2d 363:

"Under the instant record we think there is a total failure to show such a consideration. Defendant was in default with his payments under the decree. There is not a word in the record as to his ability to pay, other than his statement that the payments were difficult to meet. He was already legally bound to make payments at the rate of $6 per week per child, based upon his promise in the stipulation which was later incorporated into the decree. This new promise changed nothing except the amount he was to pay, which was a reduction. * * As to the plaintiff, she gained nothing by exchanging rights she had under the divorce decree for a naked promise to do

less than such decree required. He bound himself to do nothing that he was not already legally required to do; she gained nothing that she was not already entitled to receive. We fail to find wherein there is a good and sufficient consideration."

Instantly, this is the record touching upon the matter of consideration. To the extent here material defendant first testified, on direct examination, sometime in 1958 he contacted plaintiff by telephone.

"Q. Would you state the substance of these conversations? A. Yes. We spoke of $15.00 a week. She didn't like it but she agreed to it.

"Q. Would you be more specific? What $15.00 per week? A. We agreed—I don't know what you mean.

"Q. How did the subject of $15.00 come up in your conversations with her? A. Well, she called me and always wanted more money, wanted more money. She garnisheed my wages. I told her I couldn't pay any more.

"I finally told her if she garnisheed my wages I would lose my job. Go ahead and take my job. It didn't make any difference to me. I was getting so fed up with it, and she finally agreed to $15.00 a week."

This is the cross-examination which ensued:

"Q. Now, at the time of this conversation that you have referred to with Mrs. Denning, you told her, did you not, that you couldn't make any more payments? A. I didn't say I couldn't make them any more. She wanted more money and I couldn't make any more money.

"Q. She wanted more than $15.00 per week? A. Correct.

"Q. And you told her that if—that you weren't going to pay any more and you would just lose your job if you were garnisheed again, did you not? A. Yes. That's what they told me at the plant.

"Q. Didn't you also tell her that if she received less, or if she didn't receive that much and be satisfied with it that she would receive nothing because you would lose your job? A. Right.

"Q. And she didn't like that, did she? A. No.

"Q. So, it was a question at that time of take it or leave it, was it not? A. Yes. I could afford the fifteen.

"Q. You told her what you would do and told her that if she did not accept that, that you would do nothing, is that right?

"In other words, you told her you would pay $15.00 per week? A. Right.

"Q. And if she didn't accept the $15.00 you would pay her nothing because you would lose your job? A. Right.

"Q. Did she garnishee your wages? A. I can't remember. I don't think so.

" * * *
"Q. Let me rephrase the question. Did you, in 1964, through your attorney, seek to get an agreement modifying the divorce decree and reducing the payments to $15.00 per week? A. In 1964.

"Q. In 1964 or approximately. Do you understand my question? A. Yes.

"Q. What is your answer to the question? A. Yes.

"Q. Your answer is yes. Did you in fact get an agreement modifying the decree? A. No.

"Q. Was it because Mrs. Denning would not agree to modifying it? A. Right.

"Q. So then did you thereafter continue to pay $15.00 any way? A. Yes.

"Q. Why was that? A. That's all I could afford.

"Q. I see. Did you make any effort to bring the matter into court?

" * * *

"Q. Did you make any effort to bring the matter into court and ask the Court to reduce the amount of payments for the reason that you couldn't afford to pay more? A. No.

"Q. Did you ever consult with anyone for that purpose except for this time in 1963? Or '64? A. No.

"The defendant stated that during the ten year period when he was paying $15.-00 a week, he was making around $4,500 per year but in the last few years had been raised a bit.

"Q. Well, $4,500 a year? A. Yeah. That was one of the reasons I was in a fit of rage because they were doing a lot of cut-back at Du Ponts and I was down to number one man for a year and a half. I was lowest man on the totem pole, and she kept calling me and calling me and wanting more money, more money, and that was the reason.

"Q. Was she supporting the children at that time? A. I assume so."

From the foregoing it appears the sole basis upon which defendant attempts to sustain the claimed oral agreement is, (1) he could not afford to pay more than $15 each week; (2) *if* plaintiff persisted in pursuing legal means to enforce payment of $80 a month defendant had been told he would lose his then existing employment; and (3) *if* that happened defendant would pay nothing to plaintiff.

That alone fails to materially differentiate this case from Herb v. Herb, *supra,* or establish the consideration essential to a valid and enforceable agreement.

As stated in Simpson, Law on Contracts, (2d ed.), § 58:

" * * * either the doing, or a promise to do, any act which involves the least trouble or inconvenience, if bargained for as the required return, is sufficient consideration for a promise. One of the most important exceptions is that nei-

ther doing nor promising to do any act which one is already legally bound to the promisee to do will furnish sufficient consideration for the counter promise. In such case there is no exchange of value. The promisor gets no more than that to which he was already entitled under the pre-existing contract, and the promisee parts with nothing beyond that which he was already bound to give. Since benefit to the promisor and detriment to the promisee are wholly lacking, the requirement of consideration is not satisfied. Applications of this principle are many indeed."

See also Test v. Heaberlin, 254 Iowa 521, 523–524, 118 N.W.2d 73; In re Estate of Straka, 224 Iowa 109, 111–112, 275 N.W. 490; Durband v. Nicholson, 205 Iowa 1264, 1265–1267, 216 N.W. 278; Anderson v. Lundt, 200 Iowa 1265, 1270, 206 N.W. 657; Grant v. Green, 41 Iowa 88, 92; 17 C.J.S. Contracts §§ 61, 111; 17 Am.Jur.2d, Contracts, §§ 86, 119.

V. In support of his position defendant cites and leans heavily on Schnierle v. Schnierle, 33 N.E.2d 674 (Ohio App.Div.). That case likewise involved an attempt on the part of a divorced wife to compel payment by her former spouse of decretory child support payments. This proceeding was countered by a claim that the divorced wife had orally agreed to accept lesser payments. The court found there existed an enforceable agreement because, as stated at 33 N.E.2d 675:

"The defendant testified he refrained from going to court in 1933 to have the amount of the monthly payment reduced to $16 per month because the plaintiff stated to him that she would accept the lesser amount in full payment and it would not be necessary for him to take the matter to court.

"By foregoing the exercise of this right, the defendant furnished a sufficient consideration to support the agreement."

It thus appears that in Schnierle v. Schnierle, *supra,* a former husband said to a former wife, in effect, I cannot pay the decreed support allowance; if you don't agree to take less *I'll* exercise *my* legal right and ask the court to reduce the child support payments, in which event you may get less than I'm now required to pay. The former wife agreed to the reduction. Briefly stated, the former husband waived an acknowledged legal right.

Distinguishably, in the case at bar, the former husband said to the former wife, in effect, I cannot pay the decreed support allowance; if you don't agree to take less and cease exercising *your* legal right to compel payment you will get none of the child support I am now required to pay. The former wife, arguendo, agreed to the reduction. Briefly stated, the former husband waived nothing.

It is to us evident *Schnierle, supra,* is not here applicable.

We find no alternative but to conclude there was absence of consideration sufficient to make operative any alleged post decretal verbal agreement between plaintiff and defendant.

VI. Under the record and briefs instantly presented, there is no other issue to be resolved on this appeal. Resultantly our finding to the effect any purported agreement between plaintiff and defendant was devoid of requisite consideration is dispositive.

Trial court erred in holding the alleged agreement for reduction of child support payments was valid and enforceable.

Reversed.

All Justices concur, except STUART, J., who concurs in the results, and LARSON, J., who takes no part.