**Verlene ANTHONY, Appellee,**

v.

**Ersel ANTHONY, Appellant.**

**No. 55210.**

Supreme Court of Iowa.

Feb. 21, 1973.

Fairall & Fairall, Marshalltown, for appellant.

Swanson & Krohn, Newton, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This appeal turns on the validity and enforceability of a judgment for child support. Plaintiff sought to collect it by garnishment of defendant's wages. Defendant moved to release the garnishment, alleging plaintiff had orally agreed 17 years earlier to waive child support. Trial court found plaintiff had an enforceable $5350 judgment and overruled the motion. We reverse.

Three questions must be answered: Was there an agreement to waive child support? If so, was it a valid contract? If not, is plaintiff nevertheless estopped from enforcing the child support judgment?

We have held that divorced parents may contract between themselves as to the support of their minor child if the best interest of the child is not injured thereby; proof of the agreement with reasonable certainty is sufficient; and it may be shown by conduct and circumstances. Denning v. Denning, 185 N.W.2d 238, 240 (Iowa 1971).

Our review in this equity case is *de novo*. We give weight to fact findings of the trial court but are not bound by them. Rule 344(f)(7), R.C.P.

I. *The agreement.* Trial court found no agreement was proven. We disagree. Some recital of the evidence is necessary to show why.

Plaintiff was granted a divorce from defendant in a default proceeding on January 27, 1953. She was awarded custody of their child Lavonne Elaine, born August 6, 1949, and defendant was ordered to pay $25.00 per month child support through the clerk's office.

On December 1, 1953, plaintiff caused defendant to be cited for contempt for nonpayment of child support after August 1953. She dismissed her application "without prejudice" on December 19, 1953. In January 1954 defendant filed an applica-

tion for modification of the decree to award him custody of the child, predicated upon allegations of plaintiff's moral unfitness to have custody. This application was not pursued.

Prior to January 1954 defendant exercised visitation rights; thereafter he did not. Before then he made at least one support payment; thereafter he made none. Defendant testified: "After I filed the petition for custody, the plaintiff and I agreed that if I would drop my petition and not see my daughter with my visitation rights, then I wouldn't have to pay the child support." His sister knew of the agreement. She stated:

"In 1954, the plaintiff was in my home and told me that she had fixed it so the defendant would never see Lavonne again; they had agreed * * * that if he didn't get to see her any more, that she would accept no more child support."

Plaintiff's own sister testified for defendant. She said he exercised visitation rights for about one year after the divorce but then plaintiff told her they made an agreement that defendant would not see Lavonne any more and plaintiff would give up child support.

Lavonne testified for defendant. She grew up without knowing her father. She left home and married February 7, 1968. Lavonne visited defendant for the first time on July 23, 1970, and began to see him regularly. She stated plaintiff became very angry when she learned of these visits: "She said that he had agreed not to see me and he wouldn't have to pay child support." Lavonne testified plaintiff threatened an action against defendant for child support because he was seeing her.

It is undisputed that plaintiff made no demand upon defendant for child support from December 1953 until her lawyer wrote him in November or December 1970, about the time plaintiff told Lavonne she was going to attempt collection of the child support. Yet she had passed up an ideal opportunity to collect it in 1969. Defendant had arranged to sell his home in October 1969. The child support lien impaired his title. He testified he went to plaintiff's home and requested release of the lien. He asserted she told him she had not known there was a judgment and, because of their agreement, would sign anything necessary to release it. Subsequently she executed without new consideration a release of "any lien existing" against the property by virtue of the divorce decree.

Defendant's explanation for her 17 year acquiescence in defendant's nonpayment of child support was that she had once talked to a lawyer who told her she could get nothing from defendant because he was not then working. She insisted she always intended to seek child support and "[i]t was just a coincidence that when my daughter started visiting my former husband, I then sought back child support."

We do not think it was coincidence. Her denial of the agreement in the face of the mass of contrary evidence from the other witnesses, including members of her own family, and in view of her own conduct, is incredible.

We find defendant proved the alleged agreement with reasonable certainty. Trial court erred in holding otherwise.

■ II. *Validity of the agreement.* Trial court held alternatively that there was no consideration for the agreement, evidently concluding that because the divorce decree was silent as to visitation rights defendant had none to give up. However, the absence of an express provision for visitation rights does not deprive the noncustodial parent of the right of access to his child. 27B C.J.S. Divorce § 312 at 478; 24 Am.Jur.2d Divorce and Separation § 801 at 911 (visitation rights ensue from the fact of parenthood). Thus defendant had visitation rights despite silence of the decree.

The agreement was valid unless contrary to Lavonne's best interest. We have con-

ditioned approval of agreements to waive child support upon the best interest of the child not being injured thereby. Schofield v. Schofield, 260 Iowa 565, 567, 149 N.W. 2d 810, 811 (1967), and citations. There is a split of authority in other jurisdictions as to whether divorced parents can validly contract to exchange waiver of child support for surrender of visitation rights. Compare Pilson v. Salvoni, 65 App.D.C. 55, 79 F.2d 411 (1935)(holding such a contract invalid) with McCrann v. McCrann, 138 N.E.2d 169 (Ohio App.1951) (holding the agreement binding between the parties); see annot. 57 A.L.R.2d 1139 et seq.

In Erwin v. Erwin, 251 Iowa 1344, 105 N.W.2d 489 (1960), we held surrender by a father of visitation rights and tax exemption benefits in consideration of waiver of child support made a valid contract. It was followed in Burrell v. Burrell, 256 Iowa 490, 127 N.W.2d 78 (1964). We must now reexamine that holding insofar as it purports to permit divorced parents to trade a child's right to support from his noncustodial parent for forfeiture of that parent's visitation rights.

■ We have consistently held that the best interest of a child ordinarily requires a continuing association with his noncustodial parent. Green v. Sherman, 173 N.W.2d 843, 847 (Iowa 1970), and citations. In the leading case on the subject, Fitch v. Fitch, 207 Iowa 1193, 1197, 224 N.W. 503, 504 (1929), we disapproved a divorce decree provision which made visitation rights contingent upon payment of alimony:

> "Visitation or the denial thereof should not be made to appease one parent or punish the other. Such right of visitation should be allowed or denied, according to what is best for the child. Its welfare must receive paramount consideration."

We cannot approve such contingencies when found in agreements of divorced parents any more than when found in judicial decrees. The record in this case does not reveal any basis for believing Lavonne's best interest was served by defendant's surrender of visitation rights.

■ Nor can we permit a custodial parent lightly to bargain away his child's right to support. The child's best interest is paramount here also. See Pals v. Pals, 186 N.W.2d 619, 620 (Iowa 1971). Public interest is also involved. Parents are legally obligated to support their children. McNamara v. McNamara, 181 N.W.2d 206, 210 (Iowa 1970). Parental agreements which have the effect of making their child a public charge cannot be countenanced. In this case plaintiff was laid off work for a few months during the year after she waived child support. During that period she received Aid to Dependent Children benefits. The public was relieved of subsequent obligation by plaintiff's later marriage to Wayne Walls, who supported Lavonne until his death in 1965. She received social security benefits upon his death.

■■ In the absence of a contrary showing, we believe the best interest of a child is deleteriously affected by a parental bargain exchanging a waiver of decretory child support for a surrender of visitation rights. To the extent Erwin v. Erwin, *supra,* and Burrell v. Burrell, *supra,* hold otherwise they are overruled. On the same basis, we hold abandonment of an application for change of custody does not validate an agreement to waive child support. Presumably an action for change of custody is predicated upon the child's best interest. Rule 344(f) 15, R.C.P. Forbearance from pursuing such an action in consideration of waiver of child support can hardly be viewed as furthering the best interest of the child whose custody is at issue.

■ Judicial modification of the decree in this case would have been dependent upon proof that conditions subsequent to the decree had so changed that La-

vonne's welfare required, or at least made expedient, the modification sought. Dworak v. Dworak, 195 N.W.2d 740, 743 (Iowa 1972). No court would have been justified on this record in modifying the decree as the parties sought to do by their agreement.

We recognize that some agreements involving waiver of child support have been held valid between the parties although not as to the child or the public. See 24 Am.Jur.2d Divorce and Separation § 871. However, we believe that an agreement which is injurious to the best interest of a child is invalid for any purpose.

We find the agreement in this case void as contrary to public policy because it made the child's best interest subservient to parental self interest.

III. *Estoppel.* Defendant's motion to release the garnishment included an allegation that plaintiff's long failure to exercise her right to collect child support and defendant's reliance thereon equitably estopped her from enforcing the judgment. Trial court held the doctrine unavailable and inapplicable.

The branch of the law of equitable estoppel relied upon by defendant is called estoppel by acquiescence. It is applicable "where a person knows or ought to know that he is entitled to enforce his right or to impeach a transaction, and neglects to do so for such a length of time as would imply that he intended to waive or abandon his right." Humboldt Livestock Auction, Inc. v. B & H Cattle Co., 261 Iowa 419, 432, 155 N.W.2d 478, 487 (1967); see also 28 Am.Jur.2d Estoppel and Waiver § 57. It has long been available in Iowa. See, e. g., Carlson v. Smith, 213 Iowa 231, 236 N.W. 387 (1931).

Further, we believe it is applicable in this case. We are in equity. Plaintiff's entitlement to child support was premised upon defendant's duty to assist in the support of Lavonne. Cf. Gerk v. Gerk, 259 Iowa 293, 144 N.W.2d 104 (1966). Since Lavonne is no longer involved, her best interest is not a consideration. We are concerned only with whether equity should permit plaintiff to enforce the judgment for her own benefit. Her effort is motivated at least in part by a desire to punish defendant for visiting and getting acquainted with his own daughter.

Plaintiff knew of her right to child support for the 17 years she failed to pursue it. She led defendant to believe she intended to waive or abandon it. It is obvious defendant relied on this acquiescence. Plaintiff is equitably estopped from enforcement of the child support judgment. Cf. Sonenfeld v. Sonenfeld, 331 Mich. 60, 49 N.W.2d 60 (1951); 46 Iowa Law Review 675, 679.

Trial court erred in overruling the motion to release the garnishment.

Reversed.