In re The MARRIAGE OF Marianne M. SUNDHOLM and Daniel D. Sundholm.

Upon the Petition of Marianne M. Sundholm n/k/a Marianne Peters, Petitioner–Appellee/Cross–Appellant,

And Concerning Daniel D. Sundholm, Respondent–Appellant/Cross–Appellee.

No. 88–1690.

Court of Appeals of Iowa.

Oct. 5, 1989.

David A. Millage of Wells & Gallagher, P.C., Bettendorf, for respondent-appellant, cross-appellee.

Bobbi M. Alpers, Davenport, for petitioner-appellee, cross-appellant.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Judge.

On January 6, 1984, the parties' marriage was dissolved. Daniel was ordered to pay $50 per week for the support of their minor child, Nikki. In 1984, Daniel paid to the clerk of court $1,650 for child support. In 1985 he paid nothing.

Daniel contacted Marianne about filing a joint stipulation agreement to modify their dissolution decree. The stipulation gave Marianne authority to have Nikki's name changed and provided for termination of Daniel's child support obligation to that point in time, with the $3,250 arrearage owed to date be paid into a trust fund for Nikki. This stipulation, together with an accompanying order of approval, was presented to the district judge for signature. The judge refused to sign that order. Daniel then asked Marianne to sign a private agreement which embodied the terms of their stipulation. This private agreement was signed. It was also provided in paragraph six, so long as all terms of this contract were upheld, Marianne would sign a release form on a six-month basis stating the judgment for child support for that period had been satisfied. In paragraph seven there was a recitation there would be no payments for child support. Later, a satisfaction was filed on December 9, 1985, signed by Marianne and notarized, that child support was paid through November 25, 1985.

Daniel testified that the clerk's office was no longer taking these satisfactions of child support. Following that, Daniel requested Marianne to sign a direct deposit bank form. He told her the money he paid to the clerk of the court could then be directly deposited into a bank account and not sent to Marianne. Marianne also signed a card for a savings account at the bank, which Daniel told her would have her name, his name, and Nikki's name on it. However, this card was never received by the bank. In 1988, Marianne learned her name was not on any account established at that bank. Under this scheme, the clerk of court's records reflect Daniel paid $19,250 during the years of 1986, 1987, and 1988. All those payments were directly deposited into a checking account in his name only, and later in his name and the name of his fiancee. Daniel testified he needed his name to remain judgment free since he was buying and selling real estate in Scott County and could not do so with a child support lien against him.

Marianne testified she asked Daniel periodically about the balance of the savings account for Nikki. She never received an answer to her question. Marianne first learned in August 1988 Daniel was paying money to the clerk regularly, and this money was being deposited into a checking account, not a savings account. Marianne then learned her name was not on either the checking account or the savings account at that bank.

Marianne brought this application to cite Daniel for contempt of court. A hearing was held.

The trial court found Daniel in contempt of court. He appeals, Marianne cross-appeals. We affirm.

Daniel contends on appeal: (1) the district court erred in finding him in contempt because the agreement entered into between the parties operates as a promissory estoppel against Marianne; (2) laches should bar Marianne's claim for back child support payments; and (3) Marianne has satisfied her claim for past-due child sup-

port and the payments paid to the clerk of court are payments made in advance. Marianne cross-appeals, contending the trial court should have required Daniel to pay her attorney fees at trial and she requests attorney fees on appeal.

Our review of this contempt proceedings is for errors at law. Iowa R.App.P. 4.

I. We do not accept Daniel's argument the agreement entered into between himself and Marianne operates as a promissory estoppel against her. First and foremost, this is a contempt of court matter, not a contract enforcement action by Marianne against David.

▇▇ We agree with the trial court in its finding the agreement of the parties was not in the best interests of the minor child, Nikki.

The Iowa law has long recognized that both parents have a continuing duty to support each and every child born to them. The reasonable and necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife. Iowa Code § 597.14 (1987). Parents have a mutual duty to support their children. *Brown v. Brown*, 269 N.W.2d 819, 822 (Iowa 1978). Upon every judgment of dissolution the court may order either parent or both parents to pay an amount reasonable and necessary for the support of the child. Iowa Code § 598.21(4) (1987).

Daniel comes before the court arguing he and Marianne have made a contract which ends his obligation to pay child support for his daughter, and said agreement should be enforced by the court. Certain basic tenets of law apply to any cases involving contracts made by parents which affect their child's right to support.

▇▇ Divorced parents may contract between themselves as to the support of their minor children if the best interests of the children are not injured thereby. *Erwin v. Erwin*, 105 N.W.2d 489, 491 (Iowa 1960). The parents may contract between themselves as to support of their minor child if the best interests of the child are served thereby, but an agreement which purports

to relieve a father entirely and permanently of the duty to support his minor child is against public policy. *Pappas v. Pappas*, 75 N.W.2d 264, 266 (Iowa 1956). A father cannot be relieved from the duty to support his minor children by agreement of the mother. *Gerk v. Gerk*, 259 Iowa 293, 144 N.W.2d 104, 108 (1966).

In *Anthony v. Anthony*, 204 N.W.2d 829, 834 (Iowa 1973), the Iowa Supreme Court held an agreement by which a divorced custodial parent waived the right to child support in return for the noncustodial parent's promise not to exercise his visitation rights was void as contrary to public policy. In its opinion, the Supreme Court noted:

> Nor can we permit a custodial parent lightly to bargain away his child's right to support. The child's best interest is paramount here also. *See Pals v. Pals*, 186 N.W.2d 619, 620 (Iowa 1971). Public interest is also involved. Parents are legally obligated to support their children. *McNamara v. McNamara*, 181 N.W.2d 206, 210 (Iowa 1970).

The Court in *Anthony* found an agreement which is injurious to the best interests of the child is invalid for any purpose. The agreement in *Anthony* was specifically found to be void as contrary to public policy because it made the child's best interests subservient to parental self-interest.

In *In re Marriage of Wimmer*, 349 N.W.2d 505, 507 (Iowa App.1984), the appellate court wrote divorced parents may contract between themselves concerning the support of their minor children if the children's best interests are not harmed thereby.

In this case, Marianne made a noncourt-approved agreement about child support with Daniel. She testified she wanted to avoid the clashes and confrontations between the two of them. She had no attorney representing her and no attorney reviewed the document which she signed at her husband's lawyer's office. Marianne did not understand the typed agreement was a release of all future child support obligation on Daniel's part. At the time of the agreement, Nikki was only five years

old. To avoid the pain of the ongoing hassles with her former husband, Marianne unknowingly gave up the right to any future child support for her daughter's benefit.

II. Laches is not a bar to Marianne's claim for back child support.

■ The facts show when Marianne knew of the actual payment situation, she took immediate steps to correct the problem and bring it to the attention of the court. She did not delay.

Laches did not bar a former wife's claim for back child support payments against her former husband's estate, despite the facts she didn't attempt to enforce the judgment for twenty-two years, as she sought a general execution for back payments as soon as she learned his situation had changed. *Thurn v. Thurn*, 310 N.W.2d 539, 540 (Iowa App.1981).

We hold laches does not bar Marianne's claim for back child support.

III. We do not disturb the trial court's refusal to allow Marianne attorney fees at trial.

IV. The trial court is affirmed in all respects. In the alternative, we have considered this as a review via writ of certiorari per Iowa Rule of Appellate Procedure 304 and determine a writ of certiorari shall not issue from this court quashing the contempt order.

Daniel is ordered to pay $1,000 toward Marianne's appellate attorney fees. Costs of appeal are taxed to Daniel.

AFFIRMED.