In the Interest of C.M.W.,
A Minor Child.

M.O.W., Father, Appellant.

No. 92–880.

Court of Appeals of Iowa.

May 25, 1993.

Joseph B. McCarville, Fort Dodge, for appellant.

Mark R. Crimmins of Bennett, Crimmins & Yung, Fort Dodge, for appellee mother.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for State.

Monty L. Fisher, Fort Dodge, guardian ad litem for C.M.W.

SCHLEGEL, Judge.

The father appeals the juvenile court's termination of his parental rights to C.M.W. He contends the juvenile court erred because: (1) clear and convincing evidence did not exist pursuant to Iowa Code section 600A.8(4) (1991) to indicate that his failure to provide child support justified the termination; and (2) clear and convincing evidence did not exist to substantiate termination pursuant to Iowa Code section 232.-116(1)(h) (1991).

C.M.W., born February 1, 1988, is the natural daughter of M.O.W., the father, and J.T.B., the mother. M.O.W. and J.T.B. were never married, but they lived together for a period of time. In the late fall of 1988, the parents began to have a dispute as to the custody of C.M.W. Eventually, M.O.W. signed a stipulation which granted custody to J.T.B. and which awarded child support of eighty-five dollars per month. Thereafter, a district court order adopted the stipulation as to child custody and support. Since the entry of the order, M.O.W. has made two voluntary payments. The only other support payments were made in the form of the seizures of M.O.W.'s tax refunds in 1989 and 1990.

M.O.W. does not dispute his failure to comply with the district court's order. However, he claims his support came in the form of gifts, gas, clothes and savings bonds. He also claims he made a checking account available to J.T.B. for C.M.W.'s benefit. M.O.W. claims this was necessary because his employment history since the order was issued has been sporadic.

In February of 1990, M.O.W. pleaded guilty to false imprisonment and carrying weapons in response to a kidnapping charge involving J.T.B. and C.M.W. Earlier that month, M.O.W. came to J.T.B.'s residence and abducted her and C.M.W. The abduction involved weapons, an alleged threat to inject J.T.B. with a substance in a syringe, and an alleged act of non-consensual intercourse. C.M.W. was present throughout all of these events.

On June 26, 1991, J.T.B. filed a petition to terminate M.O.W.'s parental rights as to C.M.W. M.O.W then filed a pro se petition to terminate his own rights. M.O.W. later withdrew his pro se petition and filed a motion to terminate J.T.B.'s rights.

After a hearing on the matter, the juvenile court found that: (1) termination was appropriate pursuant to Iowa Code section 600A.8(4) because clear and convincing evidence indicated that M.O.W. had no valid excuse for his failure to pay child support; and (2) clear and convincing evidence indicated that "the circumstances surrounding the abuse and neglect exhibited by [M.O.W.] could not be eliminated or lessened by services." M.O.W. appeals.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92. The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15) (1993); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988) (citing *Dameron*, 306 N.W.2d at 745).

■ Having thoroughly reviewed the record in light of these guiding principles, we affirm the juvenile court's termination of M.O.W.'s parental rights to C.M.W. We conclude clear and convincing evidence exists under Iowa Code section 600A.8(4) (1991) to support the termination of parental rights. Section 600A.8(4) provides:

The following shall be, either separately or jointly, grounds for ordering termination of parental rights:

4. A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause.

The record in the present case unequivocally indicates that M.O.W. has failed to contribute to the support of C.M.W. as ordered by the court. Since the parties' original stipulation concerning child custody and child support was signed and adopted by the court in November of 1988, M.O.W. has made only two voluntary child support payments. The only other child support payments were made in the form of seizures of M.O.W.'s tax refunds in 1989 and 1990. The child support recovery unit's records indicate that $309.00 was garnished from these tax returns.

While M.O.W. openly admits he has failed to pay the amount of child support ordered to either the child support recovery unit or the clerk of district court of Hamilton County, he contends: (1) he has provided sufficient support for C.M.W. to avoid termination on nonsupport grounds; and (2) he has had good cause for failing to pay the ordered amount of child support. We find both of these contentions to be entirely without merit.

M.O.W. first argues he has provided adequate child support for C.M.W. since 1989 by sending the child and her mother occasional gifts, including some necessary items such as gasoline and clothing; by

purchasing two $100.00 savings bonds for the benefit of C.M.W.; and by making available a checking account to J.T.B. from October 31, 1989 until January 24, 1990. We find this argument unpersuasive: the incidental gifts clearly cannot be considered a substitute for child support; the savings bonds are of no value to C.M.W. since M.O.W.'s older son is an alternate owner of the bonds who could cash them in in the near future when he reaches age eighteen; and the checking account was of little value since J.T.B. was authorized to use the account only in case of emergency and since she had no access to the account statement and had no knowledge of the account balance.

M.O.W.'s claim that he had good cause for failing to pay child support is even more egregious. This argument is based on M.O.W.'s claim that his employment history since the entry of the child support order has been sporadic and has included only low-paying jobs. However, the record unquestionably reveals that despite numerous opportunities to do so, M.O.W. has willfully failed to pay his child support obligation. From November of 1988 until April of 1989, M.O.W. was employed as a police chief, earning $18,000 per year. Two weeks before he was scheduled to receive a raise which would have increased his salary to $19,400 per year, M.O.W. resigned from this position. More importantly, he made only two child support payments during this time period: one in December of 1988 and the other in January of 1989.

Despite holding numerous jobs after his resignation, and despite his own testimony that he could have at least made lesser payments of child support, M.O.W. has never made a voluntary payment since January of 1989. Even after receiving an IPERS refund in the amount of $2,800 in the summer of 1989, M.O.W. refused to make payments. M.O.W.'s argument that the changes in his earnings constituted good cause is completely without merit in light of the total absence of any voluntary payment of child support during the times he obviously had the ability to pay.

In *Klobnock v. Abbott*, 303 N.W.2d 149 (Iowa 1981), the court stated:

A parent has a basic obligation to support a minor child. The legislature has determined that it is in the best interests of a child to terminate a parent-child relationship if the parent refuses to support the child. Although abandonment is a separate ground for termination, section 600A.8(3), we conclude that the legislature intended termination for nonsupport to occur where a parent's failure to pay manifests indifference to a child and is therefore akin to abandonment. "[A]bnegation of court-ordered financial responsibility to a child [is] the equivalent of abandonment. A parent who unjustifiably refuses to meet a support obligation manifests complete indifference to his child." (Citation omitted). A substantial, and not merely sporadic or insignificant, failure to pay ordered support without good cause justifies termination of parental rights under section 600A.8(4).

*Id.* at 152.

The record in the present case reveals that M.O.W. has not voluntarily paid child support since January of 1989. M.O.W.'s unjustifiable failure to pay child support manifests indifference to the child, constituting abandonment. This conclusion is further strengthened by the fact that M.O.W. has seen the child only four or five times since September of 1989. Clear and convincing evidence exists in the record to terminate M.O.W.'s parental rights in accordance with Iowa Code section 600A.8(4) (1991).

In light of our holding, it is unnecessary for us to address the issue of whether termination of M.O.W.'s parental rights is warranted under Iowa Code section 232.-116(1)(h) (1991). The juvenile court's decision terminating M.O.W.'s parental rights to C.M.W. is affirmed.

**AFFIRMED.**

All Judges concur except SACKETT, J., who dissents.

SACKETT, Judge (dissenting).

I dissent.

The mother of a minor child seeks to terminate a father's parental rights.

The majority has affirmed the termination because the father has not paid child support. There is nothing in this file to reflect after termination there is an intent the child be adopted. The termination relieves the father from his obligation to pay child support in the future. I cannot subscribe to his being relieved of his child support obligation unless someone is to step in his position.

I find support for my position in *In re D.W.K.*, 365 N.W.2d 32, 35 (Iowa 1985); *Anthony v. Anthony*, 204 N.W.2d 829, 834 (Iowa 1973); *State ex rel. Evers v. Berridge*, 447 N.W.2d 562, 563 (Iowa App. 1989). These cases are distinguishable only in so much as they involve fathers voluntarily attempting to relieve themselves of child support obligations through termination. However, their premise is that even if statutory grounds for termination are met, we must look to a child's best interest. Clearly, terminating the child's right to receive support from her father is not in her best interest. Furthermore, there being no evidence the mother can support the child on her own, part of the responsibility for the child's support may fall on the state.