**IN THE COURT OF APPEALS OF IOWA**

No. 17-1570
Filed June 6, 2018

**IN THE INTEREST OF A.T. and A.T.,**
**Minor Children,**

**A.B., Mother,**
    Petitioner-Appellee,

**K.T., Father,**
    Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof,

District Associate Judge.


        Father appeals from the termination of his parental rights pursuant to Iowa

Code chapter 600A (2017).  **AFFIRMED.**



        G. Brian Weiler, Davenport, for appellant.

        Candy K. Pastrnak of Pastrnak Law Firm. P.C., Davenport, for appellee.

        Rebecca C. Sharpe of Aitken, Aitken & Sharpe, P.C., Bettendorf, guardian

ad litem for minor children.

        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Kendale appeals from the termination of his parental rights in A.M.T. (born 2007) and A.J.T. (born 2010) pursuant to Iowa Code section 600A.8(3)(b) and (4) (2017). The termination action was brought by the children's mother, Alex. On appeal, Kendale challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of his parental rights and the sufficiency of the evidence establishing the termination of his parental rights was in the best interest of the children.

I.

"Termination proceedings under Iowa Code chapter 600A are a two-step process. In the first step, the petitioner seeking termination must first show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights. Once that threshold showing has been made, the petitioner next must show, by clear and convincing evidence, termination of parental rights is in the best interest of the child." *In re Q.G.*, ___ N.W.2d ___, ___, 2018 WL 2071823, at *9 (Iowa 2018). It is the petitioner's burden to prove each element of the case by clear and convincing evidence. *See* Iowa Code § 600A.8. We review termination proceedings arising under Iowa Code chapter 600A de novo. *See In re Q.G.,* 2018 WL 2071823, at *8; *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We defer to the factual findings of the district court, especially witness-credibility findings, but we are not bound by them. *See G.A.*, 826 N.W.2d at 127.

II.

A.

We first address the sufficiency of the evidence supporting the grounds authorizing the termination of Kendale's parental rights. Where, as here, the district court terminated a parent's rights pursuant to more than one statutory provision, we will affirm the termination order if any ground is supported by sufficient evidence. We turn our attention to Iowa Code section 600A.8(4). Pursuant to this provision, the district court may terminate a parent's rights upon clear and convincing evidence the "parent has been ordered to contribute to the support of the child . . . and has failed to do so without good cause." Iowa Code § 600A.8(4). "If there has been a showing of a substantial failure to pay, the court must then consider whether that failure was without good cause. In considering whether there is good cause for failure to pay child support, the key factual issue is the parent's ability to pay. A parent's intent is clearly tied to an ability to pay." *See In re M.J.W.*, No. 17-0149, 2017 WL 2665957, at *3 (Iowa Ct. App. June 21, 2017).

By way of background, Kendale and Alex were teenagers when Alex became pregnant with A.M.T. After the birth of A.M.T., Kendale and Alex remained in an on-again, off-again relationship for four or five years. During this time, the parents had another child, A.J.T. Throughout the children's lives, Kendale has been involved in criminal activity and provided little to no financial support for the children due to periods of incarceration and voluntary unemployment. The district court found:

> Petitioner has proven by clear and convincing proof that [Kendale] was ordered to contribute to the support of his children and that he failed to contribute to their support within the definition of 600A.8(4). Part of the time he was incarcerated and therefore unable to contribute to their support. But he also did not contribute when he was working and when he was released. The largest payment made by him was due to a garnishment of a tax return. He has paid approximately 10% of his ordered financial support. He has an outstanding balance of over $6,000.00 and was only ordered to pay $50.00 monthly. There is absolutely no evidence that he contributed financially to the care and upkeep of his children beyond the $840.00

Like the district court, we conclude there is clear and convincing evidence Kendale failed to contribute to the support of the children when ordered to do so without good cause. Kendale was ordered to pay only a nominal amount of child support for his two children, but he has failed to even pay that amount. While it is true Kendale was incarcerated for a portion of the children's lives, incarceration alone cannot excuse the failure to pay. *See In re C.J.D.*, No. 07-0766, 2007 WL 4322213, at *4 (Iowa Ct. App. Dec. 12, 2007); *In re J.L.W.*, 523 N.W.2d 622, 624 (Iowa Ct. App. 1994), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "An incarcerated parent must take full responsibility for the conduct that resulted in his confinement. Our courts are generally unsympathetic toward self-created obstacles to supporting one's children." *C.J.D.*, 2007 WL 4322213, at *4 (citations omitted).

Even when not incarcerated, Kendale failed to contribute financial support for the children. Kendale had several jobs, but "[h]e may have [had] a job for month, two months, three months, and then he would just not show up or quit." Kendale's voluntary decision to become unemployed rather than support his children does not constitute good cause. *See M.J.W.*, 2017 WL 2665957, at *3

(finding father's "deliberate decision to forgo work was a deliberate decision to not support his own child. It does not amount to good cause.").

In addition, even the nominal amounts of support paid were involuntary payments through garnishment of a tax return and wage withholding. A significant consideration in evaluating intent is the voluntariness of the payments. *See In re K.N.B.*, No. 11-1061, 2012 WL 1246524, at *4 (Iowa Ct. App. Apr. 11, 2012) (finding no good cause where "[w]e note that in those years when she paid child support, this was primarily due to the seizure of tax refunds or other government payments"); *see also M.J.W.*, 2017 WL 2665957, at *3 ("We also note the contributions Christopher did make resulted from wage garnishments and withholding tax refunds, not voluntary payments."); *In re C.M.W.*, 503 N.W.2d 874, 876 (Iowa Ct. App. 1993) (noting there was no showing of good cause for failure to pay child support in light of parent's failure to make voluntary payments during times he had the ability to pay).

Kendale chose not to provide financial support for his children. His consistent failure to pay manifests indifference to his children and their needs. We find clear and convincing evidence to support the termination of Kendale's parental rights pursuant to Iowa Code section 600A.8(4). Because we reach this conclusion, we need not address the other termination ground challenged on appeal. *See In re M.R.P.*, No. 15-1683, 2016 WL 1761318, at *2 (Iowa Ct. App. Apr. 27, 2016).

B.

We next address whether the termination of Kendale's rights is in the best interest of the children. The supreme court recently articulated the best interest standard:

> Iowa Code section 600A.1 provides a lengthy description regarding application of the concept of "best interest of the child" in termination proceedings. The provision states the best interest of the child "shall be the paramount consideration" in interpreting the chapter. [Iowa Code] § 600A.1. Yet, the section further provides the interests of the parents of the child "shall be given due consideration." *Id.*
> The best interest of the child requires each parent "affirmatively assume the duties encompassed by the role of being a parent." *Id.* Among other things, the court is directed to consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.*
> In addition to applying the language of Iowa Code section 600A.1, we have also borrowed from Iowa Code section 232.116(2) and (3) to flesh out the best-interest-of-the-child test. *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). We consider the child's "physical, mental, and emotional condition and needs" and the "closeness of the parent-child relationship." Iowa Code § 232.116(2)-(3).
> The best-interest-of-the-child test plainly has both backward-looking and forward-looking components. We have cited with approval a discussion of the court of appeals, which stated,

> > We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

> > *In re R.K.B.*, 572 N.W.2d 600, 601 [Iowa 1998] (quoting *In re C.M.W.*, 503 N.W.2d 874, 875 (Iowa Ct. App. 1993)).

*Q.G.*, 2018 WL 2071823, at *9–10.

There is clear and convincing evidence the termination of Kendale's rights is in the best interest of the children. As noted above, Kendale has not provided financial support for either child. Alex testified she worked and supported herself, Kendale, and the children.

Further, Kendale has had limited involvement with his children. Alex's parents watched the children while Alex worked when Kendale and Alex were a couple. After that point, Kendale exercised some visitation with the children between 2013 to 2015. These visits took place at Kendale's girlfriend's house until the children reported witnessing physical violence by Kendale. According to Alex, Kendale has not visited the children since an incident in October 2015. During the incident, Kendale tried to strangle Alex in front of the children. Alex sought and obtained an order of protection, which contained set visitation times for Kendale. Kendale consented to the order of protection. Alex testified Kendale almost never called during the scheduled times over the following years. Since 2015, Kendale sent "maybe two letters" for the children. Kendale also sent "five or six letters" to the maternal grandmother's house for the children in the last two years. When Kendale was at a halfway house from June to November 2016, he talked to the children four times. He testified he called Alex daily, but she refused to answer or give him visits. The juvenile court found this testimony was "simply not credible." We agree. The evidence reflects Kendale has had only a de minimis role in the children's lives for an extended period of time.

Even the limited relationship between Kendale and the children is not positive, and there is little prospect of building a better relationship. According to Alex and her mother, the children are afraid of Kendale after witnessing Kendale's assault on Alex. Kendale is currently incarcerated. While he has a potential release date of June 2018, that is not certain. Even then, Kendale has demonstrated a history of criminal behavior and subsequent incarceration over a long period of time. There is nothing in this record to demonstrate Kendale will change this behavior upon his release from prison.

The detriment imposed on the children by terminating Kendale's parental rights is minimal while the benefit is positive. Alex's fiancé intends to adopt the children. The children are excited by this prospect. It will bring stability and permanency to their family structure. This is in the children's best interest and augurs in favor of terminating Kendale's parental rights. *See In re B.L.A.*, 357 N.W.2d 20, 23–24 (Iowa 1984); *In re N.F.A.*, No. 05-1127, 2006 WL 229039, at *4 (Iowa Ct. App. Feb. 1, 2006).

III.

We affirm the termination of Kendale's parental rights.

**AFFIRMED.**